**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DWAYNE RANSOM DAVIS and MELISA DAVIS, on behalf of themselves and all others similarly-situated,<br><br>                Plaintiffs,<br><br>    vs.<br><br><br>COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA, N.A.; BAC GP, LLC; and BAC HOME LOANS SERVICING, LP,<br><br>              Defendants. | Case No: 1:10-cv-01303-JMS-DML |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Countrywide Home Loans, Inc. ("Countrywide"), Bank of America, N.A., BAC GP, LLC, and BAC Home Loans Servicing, LP (collectively, "Defendants"), by counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), submit this memorandum in support of their motion to dismiss Plaintiffs' Complaint and state as follows:

**INTRODUCTION**

Plaintiffs Dwayne and Melisa Davis mortgaged their property in 2007 through Countrywide.[1]  By October 2007, Plaintiffs had defaulted on their mortgage payments causing Countrywide to institute foreclosure proceedings and ultimately foreclose on Plaintiffs' property.

---

[1] On July 31, 2008, Countrywide Financial Corporation completed its merger with Red Oak Merger Corporation, a Delaware corporation and wholly-owned subsidiary of Bank of America Corporation.  Countrywide Financial Corporation was the survivor of the merger, and thereby became a wholly-owned subsidiary of Bank of America Corporation.  As a result of the merger, Countrywide became an indirect subsidiary of Bank of America Corporation.

Expressly disclaiming any attempt to reopen or disturb the underlying state court foreclosure judgment, Plaintiffs allege in this federal court putative class action proceeding that Defendants' filing of purportedly fraudulent affidavits caused them damage by the premature loss of their home.  Because the underlying foreclosure judgment cannot be attacked in a federal proceeding under the *Rooker-Feldman* doctrine and principles of *res judicata*, and collateral estoppel, Plaintiffs' Complaint should be dismissed.  In addition, Plaintiffs do not have standing to assert a RICO claim because Plaintiffs do not plead facts to show they were injured "by reason of" the alleged racketeering activity and fail to plead any of the underlying RICO sections on which they rely.  Lastly, the FDCPA claim should be dismissed because Defendants are not a "debt collector" and the underlying foreclosure proceeding was an action to enforce a security interest, not an attempt to collect a debt.

## ALLEGATIONS IN THE COMPLAINT

This putative class action lawsuit against Defendants arises out of foreclosure proceedings instituted by Countrywide in 2008.  According to Plaintiffs' Complaint, on March 16, 2007, Plaintiffs mortgaged their property to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee, with Countrywide as the Lender-mortgagee.  (Compl. ¶ 51; Ex. A to Plaintiffs' Complaint ("Ex. A").)  On January 30, 2008, Countrywide instituted foreclosure proceedings in Rush County Superior Court, Cause Number 70D01-0802-MF-017, against Plaintiffs based on Plaintiffs' failure to make their mortgage payments (the "Foreclosure Action").  (Compl. ¶ 52; Ex. A.)  On April 4, 2008, Countrywide filed a Motion for Summary Judgment in the Foreclosure Action, attaching as evidence an affidavit signed by Keri Selman.  (Compl. ¶ 53, Ex. B to Plaintiffs' Complaint ("Ex. B").)  Ms. Selman stated that she was an Assistant Vice President of Countrywide and that she had personally reviewed the documents in

2

support of the Foreclosure Action complaint.  (Compl. ¶ 54; Ex. B.)  On July 20, 2009, an additional affidavit (entitled "Updated Affidavit of Mortgagee and Non-Military Affidavit), provided by Melissa Viveros was filed in the Foreclosure Action.  (Compl. ¶ 62; Ex. C to Plaintiffs' Complaint ("Ex. C").)  Ms. Viveros stated that she was a Vice President of the Plaintiff-Mortgagee and that she had examined the books and records in support of her affidavit. (Compl. ¶ 63; Ex. C.)  The Rush County Superior Court approved the foreclosure on September 15, 2009, and Plaintiffs' property was sold in a sheriff's sale.  (*See* Compl. ¶ 71.)

Plaintiffs filed this Complaint against Defendants on October 19, 2010, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. At the heart of Plaintiffs' Complaint is the claim that the affidavits filed in support of Countrywide's Motion for Summary Judgment in the Foreclosure Action were fraudulently signed by Ms. Selman and Ms. Viveros, who purportedly did not verify the facts in the affidavits before signing them.   (Compl. ¶¶ 44-47, 53-60, 62-68.)  Plaintiffs assert that these affidavits were "necessarily perjured" because Ms. Selman and Ms. Viveros could not have read the allegations in the complaints, examined all of the documents or exhibits "and still read all of the accompanying documentation to all of the other affidavits [ ] signed the same day."  (Compl. ¶¶ 59, 67.)  Plaintiffs also assert that Ms. Selman and Ms. Viveros did not properly identify their employment in the affidavits, as Ms. Selman has signed affidavits as Vice President for several lending entities, not just Countrywide (Compl. ¶ 57), and Ms. Viveros was never employed with Countrywide, but rather BAC GP, LLC (Compl. ¶ 64).  Plaintiffs claim that the Rush County Superior Court relied on the statements in these affidavits in granting the foreclosure judgment and sale of Plaintiffs' property in the Foreclosure Action.  (Compl. ¶¶ 61, 69, 71.)

Notably, Plaintiffs do not "seek to reopen or disturb the judgments in [the Foreclosure Action], and instead seek only monetary damages as a result of being prematurely evicted from their houses based on perjured affidavits."  (Compl. ¶ 6.)

Plaintiffs also allege that the MERS system used by Defendants in this circumstance was created to "rewrite the most fundamental rules of how mortgages and promissory notes were generated, assigned, and recorded" (Compl. ¶ 27), by eliminating the need for recording assignments in paper.  (Compl. ¶¶ 31-32, 35.)  Moreover, Plaintiffs contend that it has been "widely reported" that MERS was "poorly conceived and sloppily run."  (Compl. ¶ 37.)  Specific to Defendants, Plaintiffs assert that that Defendants knew about the deficiencies in MERS, but proceeded with the Foreclosure Action nevertheless.  (Compl. ¶ 78.)[2]

## ARGUMENT

### A.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" in order "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rule 8(a)(2) imposes a "plausibility standard" which requires factual allegations showing "more than a sheer possibility that a defendant has

---

[2] Despite Plaintiffs' devotion of a significant portion of their Complaint to discussion of the alleged deficiencies involved with MERS, the MERS system has recently been upheld as a valid recording system.  *Cervantes v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 87997, at *29-34 (D. Ariz. Sept. 23, 2009) (order granting motion to dismiss) (dismissing a claim that the MERS system was fraudulent because plaintiffs failed to plead that the MERS system had any affect on the their obligations under their mortgages or that MERS' system fraudulently induced consumers to enter into loans); *In Re MERS Litig*, 2010 U.S. Dist. LEXIS 106345, at *59 (D. Ariz. Sept. 30, 2010) (order granting motion to dismiss) (dismissing plaintiffs' claim that defendants used MERS to conspire to commit fraud because it was "an attack on the legitimacy of the MERS system itself," which had already been resolved in *Cervantes*).

acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Well-pleaded factual

allegations are presumed true when considering a Rule 12(b)(6) motion, but legal conclusions are

not.  *Id*.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," fail to state a plausible claim, because such allegations fail to show

"more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  The Seventh Circuit

has recognized that under *Twombly* and *Iqbal* the plaintiff must allege in his complaint "enough

information to state a legally cognizable claim."  *Bissessur v. Ind. Univ. Bd. of Trs.,* 581 F.3d

599, 602 (7th Cir. 2009).  Moreover, the court "must determine what allegations are necessary to

show that recovery is 'plausible.'"  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

Even before *Twombly* and *Iqbal*, courts in this district recognized that plaintiffs "must allege a

cognizable claim against each defendant."  *Reinbold v. Harris*, 2000 U.S. Dist. LEXIS 16643, at

*3 (S.D. Ind. Nov. 7, 2000).

Rule 12(b)(1) requires the district court to dismiss an action when it lacks subject matter

jurisdiction over the case.  *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th

Cir. 2003).  If subject matter jurisdiction is not evident on the face of the complaint, the motion

to dismiss pursuant to Rule 12(b)(1) is analyzed as any other motion to dismiss, by assuming for

the purposes of the motion that the well-pleaded factual allegations in the complaint are true.  *Id*.

The plaintiff bears the burden of establishing that the jurisdictional requirements have been met,

and when a party moves for dismissal pursuant to Rule 12(b)(1), the non-moving party must

support its allegations with competent proof of jurisdictional facts.  *Stokes v. Norfolk & S. Ry.*

*Co.*, 99 F. Supp. 2d 966, 970 (N.D. Ind. 2000).

**B.**   **PLAINTIFFS' CLAIMS ARE PRECLUDED AS A RESULT OF THE JUDGMENT ENTERED AGAINST THEM IN THE STATE FORECLOSURE ACTION.**

**1.**   **This Court lacks subject matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* Doctrine.**

While Plaintiffs claim that they do not seek to disrupt the underlying judgment entered in the Foreclosure Action, Plaintiffs' claims are, at their core, an attack on the state court judgment in that Action. (*See, e.g.*, Compl. ¶ 6 ("Although the fraudulent activity occurred in foreclosure proceedings, the Plaintiffs and Class do not seek to reopen or disturb the judgments in those foreclosures, and instead seek only monetary damages *as a result of being prematurely evicted from their houses based on perjured affidavits*.") (emphasis added); ¶ 48 ("The Defendants knew that the affidavits were perjured, but nevertheless submitted the affidavits to courts in foreclosure proceedings around the country, *using these fraudulent documents to take people's homes prematurely in disregard for their property rights*.") (emphasis added); ¶ 71 ("As a result of the Plaintiffs' and Court's reliance on the statements in the [affidavits], the Plaintiffs' property was foreclosed upon and eventually sold in a sheriff's sale. The *Plaintiffs lost their home in disregard of the law*.") (emphasis added).)

Because the *Rooker-Feldman* doctrine is about whether lower federal courts have the authority (i.e., the subject matter jurisdiction) to hear a given case, it is appropriately raised in a Rule 12(b)(1) motion to dismiss. *Garry v. Geils*, 82 F.3d 1362, 1364 (7th Cir. 1996); *Hanover Group, Inc. v. Manufactured Home Cmtys., Inc.*, 2000 U.S. Dist. LEXIS 11501, at *2-3 (S.D. Ind. July 12, 2000). The *Rooker-Feldman* doctrine  bars claims "'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 431 (7th Cir. 2009) (quoting *Exxon Mobil Corp. v.*

*Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  Essentially, the *Rooker-Feldman* doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations."  *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000).  A claim will be deemed to be "inextricably intertwined" with a state court decision and, therefore, beyond the district court's subject matter jurisdiction, even when the claim was not argued in state court.  *Garry*, 82 F.3d at 1369.  District courts lack jurisdiction over these claims because "no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment."  *Remer*, 205 F.3d at 996.

The Seventh Circuit has applied the *Rooker-Feldman* doctrine to bar plaintiffs from collaterally attacking state court foreclosure judgments in federal court.  *Stanley v. Hollingsworth*, 307 F. App'x 6, 8 (7th Cir. 2009) ("[Plaintiff's] suit appears . . . to ask the federal district court to review the decision in his foreclosure action.  And that a federal court may not do under the doctrine of *Rooker-Feldman*."); *Gash Assocs. v. Rosemont*, 995 F.2d 726, 727 (7th Cir. 1993) ("Litigants cannot file collateral attacks on civil [foreclosure] judgments."); *Crawford v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 84995, at *16 (N.D. Ind. Aug. 16, 2010) (finding that claims that the plaintiffs were deprived of fairness in their foreclosure proceedings were "a direct attack on the foreclosure proceedings which implicates *Rooker-Feldman*" and were, therefore, complaints about "an injury caused by the state court judgment"); *Linner v. Wells Fargo Home Mortg., Inc.*, 2009 U.S. Dist. LEXIS 74603, at *6-10 (N.D. Ind. Aug. 20, 2009) ("[T]o the extent that the Amended Complaint asks the Court to review and set aside the state foreclosure judgment, the Court will grant [the] Motion to Dismiss for lack of subject-matter jurisdiction.").

Additionally, courts in the Seventh Circuit have held that the *Rooker-Feldman* doctrine bars claims alleging fraud in the underlying state court action.  *Taylor v. Federal Nat'l Mortg. Ass'n*, 374 F.3d 529, 533 (7th Cir. 2004) (applying *Rooker-Feldman* even though the plaintiff claimed that "a fraud was perpetrated on the state court that granted the judgment of foreclosure"); *see Manley v. City of Chicago*, 236 F.3d 392, 397 (7th Cir. 2001) (rejecting a *Rooker-Feldman* exception for due process claims based on "'new' evidence concealed during the state court proceedings"); *Davis v. Allen County Office of Family & Children*, 1997 U.S. App. LEXIS 10806, at *1-3 (7th Cir. May 6, 1997) (applying *Rooker-Feldman* even though the plaintiff alleged that the defendant procured a judgment through "falsified documents").[3]

While Plaintiffs claim that they do not seek to overturn the judgment in the Foreclosure Action, it is clear they are trying to do precisely that.  Plaintiffs claim that they lost their home in "disregard of the law," which is essentially an attack on the validity of the state court judgment. Additionally, Plaintiffs allege they were prematurely evicted from their home, which is a direct challenge to the state court's decision to allow the foreclosure.  Plaintiffs' conclusory disclaimer of any intent to attack the underlying state court judgment is of no moment when the essence of their claim and the relief they seek here, i.e., damages as a result of an allegedly unlawful

---

[3] This court, and other district courts within the Seventh Circuit, have come to the same conclusion.  *See Blanford v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2009 U.S. Dist. LEXIS 15760, at *11-12 (S.D. Ind. Feb. 27, 2009) (applying *Rooker-Feldman* even though the plaintiff alleged that the defendant "perpetrated a fraud on the state court"); *Rachuy v. McCarney*, 2010 U.S. Dist. LEXIS 1151, at *9 (W.D. Wis. Jan. 6, 2010) ("Plaintiffs contend that defendant committed fraud upon the state courts by either committing perjury or admitting false evidence during the state court proceedings. *Rooker-Feldman* requires plaintiffs to seek relief through the state courts if they want those state court judgments vacated."); *Warden v. Nw. Bank*, 2003 U.S. Dist. LEXIS 21698, at *7-9 (N.D. Ill. Dec. 1, 2003) (applying *Rooker-Feldman* to allegations of a "fraudulent stipulation," reasoning, "The state court judgment does not cease to exist simply because the [plaintiffs] claim that it is fraudulent.  The [plaintiffs] had the opportunity to appeal the state court decision through the proper channels and failed to do so.").

foreclosure, squarely attacks the underlying state court foreclosure judgment.[4]  "The plaintiffs

are essentially claiming injury due to a state court judgment against them" – the foreclosure

judgment against their real property.  *See Garry*, 82 F.3d at 1368.  This is impermissible, and

Plaintiffs cannot circumvent this jurisdictional bar simply by recasting their Complaint in the

form of a RICO and FDCPA action for damages.  For these reasons, the *Rooker-Feldman*

doctrine bars Plaintiffs' claims.

> ### 2.    Plaintiffs' claims are barred by *res judicata*.

Plaintiffs' claims are also barred by *res judicata*.  The doctrine of *res judicata* "extends

not only to questions actually decided, but also to all grounds of recovery and defenses which

might have been presented."  *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1234 (7th Cir.

1986).  Plaintiffs are claiming that the information in the affidavits was perjured, and as a result,

they are entitled to damages.  Because Plaintiffs could have raised these claims as defenses to the

state foreclosure action, these claims are now barred by *res judicata*.  *See Henry*, 808 F.2d at

1232 (under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court

judgments the same preclusive effect that those judgments would have in state court); *Bicknell v.

Stanley*, 1990 U.S. Dist. LEXIS 11500, at *28 (S.D. Ind. Aug. 28, 1990) ("[I]t is 'well settled

that a state court judgment must be given the same *res judicata* effect in federal court that it

would be given in the courts of the rendering state.'" (quoting *Jones v. City of Alton*, 757 F.2d

878, 883 (7th Cir. 1985)).

Under Indiana law,[5] *res judicata* applies where:

---

[4]  The Seventh Circuit applies the *Rooker-Feldman* doctrine regardless of whether monetary
damages are sought.  *See Garry*, 82 F.3d at 1370.

[5] Because the Rush County Superior Court issued the foreclosure judgment, this Court must look
to Indiana *res judicata* principles.  *Henry*, 808 F.2d at 1234.

> (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was or might have been determined in the former suit; and (4) the controversy adjudicated in the former suit must have been between the parties to the present action or their privies.

*Chemco Transport, Inc. v. Conn*, 527 N.E.2d 179, 181 (Ind. 1988).

First, Plaintiffs admit that a judgment has been entered and their property foreclosed upon. (Compl. ¶ 6, 71.) Second, a foreclosure judgment is a final judgment on the merits. *Henry*, 808 F.2d at 1232; *see, e.g.*, *Integra Bank, N.A. v. Greer*, 2003 U.S. Dist. LEXIS 11580, at *7-9 (S.D. Ind. June 26, 2003) ("Res judicata prevents the relitigation of any of the issues decided by the state court, including the state court's decision to allow foreclosure."). Third, Plaintiffs could have raised these issues as defenses to the Foreclosure Action. *See Henry*, 808 F.2d at 1236-37 (finding that RICO, fraud, or forgery claims cannot be used "to mount a collateral attack on otherwise valid and final state court judgments."). Lastly, Defendant Countrywide was the only plaintiff in the Foreclosure Action. (Compl. ¶¶ 52, 12.) Therefore, Plaintiffs' claims are barred by *res judicata*.[6]

### 3.    Plaintiffs' claims are barred by collateral estoppel.

Just as with *res judicata,* collateral estoppel also bars Plaintiffs' claims because Plaintiffs are asserting that the information presented in the allegedly fraudulent affidavits was incorrect, and the state court judgment has already determined this factual question. Under Indiana law, collateral estoppel "bars the subsequent re-litigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in the subsequent suit." *Infectious Disease of Indianapolis, P.S.C. v. Toney*, 813 N.E.2d 1223, 1228

---

[6] To the extent Plaintiffs claim that *res judicata* does not apply in cases involving alleged fraud on the court, *see Powell v. Am. Bank & Trust Co.*, 640 F. Supp. 1568, 1574 (N.D. Ind. 1986), that argument is unavailable to them given their stated intent not to "seek to reopen or disturb the judgments in" the Foreclosure Action (Compl. ¶ 6).

(Ind. Ct. App. 2004)).  Thus, "the first adjudication is held conclusive even if the second action is on a different claim."  *Id.*  Collateral estoppel applies when there has been: "(1) a final judgment on the merits in a court of competent jurisdiction; (2) identity of issues; and (3) [a showing that] the party to be estopped was a party or the privity of a party in the prior action."  *Id.*

First, as stated above, there was a final judgment on the merits of the underlying foreclosure action.  *See Henry*, 808 F.2d at 1232; *Greer*, 2003 U.S. Dist. LEXIS 11580, at *7-9.[7] Second, Plaintiffs' claims, although couched in different legal theories, involve the identical issues as the state court Foreclosure Action: the validity of the foreclosure judgment.  Third, Plaintiff was the defendant in the Foreclosure Action.  Accordingly, collateral estoppel also bars Plaintiffs' claims.

## C.     COUNT I (RICO) SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### 1.     Plaintiffs lack standing to sue under RICO because they have failed to plead injury "by reason of" the alleged wrongful acts.

The Complaint also fails to state a claim for RICO because Plaintiffs lack standing to assert a RICO claim because they have not alleged an injury by reason of the alleged RICO violation.  18 U.S.C. § 1964(c) provides that a person "injured in his business or property by reason of a violation of section 1962 of this chapter" may bring an action, which requires a party asserting a RICO claim must allege a "'direct relation between the injury asserted and the injurious conduct alleged.'"  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (quoting

---

[7] Courts in this Circuit have found that central to foreclosure actions is the decision that the mortgage is valid.  *See Lowe v. 1st Union Nat'l Bank*, 2002 U.S. Dist. LEXIS 24757, at *3 (N.D. Ill. Dec. 24, 2002) ("[Because] the state court concluded that First Union was entitled to foreclose, [the plaintiff] cannot now argue that the foreclosure was fraudulent and improper."); *Seaphus v. Lilly*, 691 F. Supp. 127, 138 (N.D. Ill. 1988) ("[The] plaintiff essentially seeks to relitigate the propriety of the judgment of foreclosure . . . . The doctrines of *res judicata* and collateral estoppel prohibit plaintiff from collaterally attacking those judgments in this court.").

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)); *see Bridge v. Phoenix Bond &*

*Indem. Co.*, 553 U.S. 639, 657 (2008); *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d

396, 403 (7th Cir. 2006) ("[A] civil RICO claim cannot survive unless the plaintiff properly

alleges that the RICO violation was the proximate cause of his or her damages." (citing *Anza*,

547 U.S. at 461-62)).  Courts have interpreted this as a standing requirement to assert a RICO

claim, and not an element of a RICO claim.  *Hecking v. Pan Am. Airways*, 2006 U.S. Dist.

LEXIS 64787, at *12-13 (S.D. Ind. Sept. 11, 2006) ("The phrase 'injured in business or

property' has been interpreted as a standing requirement – rather than an element of the cause of

action - which must be satisfied in order to prevail on a RICO claim." (quoting *Evans v. City of*

*Chicago*, 434 F.3d 916 (7th Cir. 2006)).  In *Kaye v. D'Amato*, the Seventh Circuit, following

*Anza* and *James Cape*, found that the plaintiff had failed to demonstrate that he would have not

been injured had it not been for the alleged pattern of fraud.  357 F. App'x 706, 716 (7th Cir.

2009) (finding no proximate cause between the alleged RICO activity and the claimed injury

because the plaintiff could not demonstrate that he would have benefited had it not been for the

alleged pattern of fraud).

  Here, because Plaintiffs expressly disclaim any attempt to upset the foreclosure

judgments, these judgments are valid and binding on them, regardless of whether the affidavits

contained some inaccurate statements.  In other words, Plaintiffs fail to plead that the allegedly

improper activities of Defendants *caused* them any harm.

  In addition, Plaintiffs plead no facts to support their claim that the result, i.e., a judgment

of foreclosure, would have been any different had the alleged inaccuracies in the underlying

affidavit been discovered in the state court proceeding.  Indeed, Plaintiffs' issue with the

affidavits is that the affiants did not have personal knowledge and the affiants' titles were

misstated, but Plaintiffs take no issue with the facts and figures showing Plaintiffs' default on their mortgage.  Thus, Plaintiffs plead no facts to show they were injured by reason of the allegedly false affidavits, and therefore do not have standing to assert a claim under RICO.

> **2.      Plaintiffs fail to plead under which subsection of RICO they bring their claim.**

Plaintiffs also fail to plead what section of RICO Defendants have allegedly violated. Plaintiffs merely cite to 18 U.S.C. § 1961 *et seq.  Twombly* requires that a plaintiff give the defendant notice of the claim and the grounds upon which the claim rests.  *Twombly*, 550 U.S. at 555; *Bissessur,* 581 F.3d at 602 (stating that the plaintiff must allege "enough information to state a legally cognizable claim").  Even the most charitable pleading standard does not excuse this critical threshold failure.  "[I]t is essential to plead precisely in a RICO case . . . the RICO section allegedly violated."  *Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989); *O'Keefe v. Courtney*, 655 F. Supp. 16, 21 (N.D. Ill. 1985) (noting that the court could not adequately address the claims raised in a motion to dismiss "because the complaint fail[ed] to specify under which subsection of § 1962 plaintiffs seek relief").  Each of the four subdivisions of § 1962 refer to entirely different claims for relief, each of which involves separate elements. *See* §§ 1962(a), (b), (c), (d).  Without pleading the specific underlying section and facts to support their RICO claims, Plaintiffs' claims for violation of RICO should be dismissed.

## D.      PLAINTIFFS HAVE ALSO FAILED TO STATE AN FDCPA CLAIM.

Plaintiffs cannot pursue an FDCPA claim against Defendants because Defendants, including Countrywide, fall outside the definition of "debt collector" under the FDCPA.  The FDCPA defines that term as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).  Specifically excluded from the definition are, among other things, "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" and "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts."  15 U.S.C. § 1692a(6)(A)–(B).  Moreover, the FDCPA defines a creditor as "any person who offers or extends credit creating a debt or to whom a debt is owed . . . ."  15 U.S.C. § 1692a(4).

Numerous courts have held that "the FDCPA excludes creditors from the definition of debt collectors."  *Dahlhammer v. Citibank (S.D.) N.A.,* 2006 U.S. Dist. LEXIS 86859, at *11-12 (M.D. Pa. Nov. 30, 2006) (citing cases from several sister circuits); *see also Crawford v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 84995, at *21-22 (N.D. Ind. Aug. 16, 2010) (finding that the FDCPA did not apply because a "'debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt as long as the debt was not in default at the time it was assigned.'" (*quoting Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985)); *Purdue Emps. Fed. Credit Union v. Van Houten*, 2008 U.S. Dist LEXIS 73258, at *14 (N.D. Ind. Sept. 24, 2008) ("Because [the defendant] was acting in its capacity as the [ ] creditor, rather than acting as a third party debt collector, the FDCPA does not apply to any actions they may have taken pursuant to the [plaintiff's] mortgage foreclosure.").[8]  Moreover, this Court has also

---

[8]  *See also Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 130 n.4 (3d Cir. 2009) ("The FDCPA's provisions generally apply only to debt collectors. . . .  Creditors – as opposed to debt

acknowledged that creditors are not considered "debt collectors" under the FDCPA when they are attempting to collect their own debts.  *Blanford v. St. Vincent Hosp. & Health Care Ctr. Inc.*, 2009 U.S. Dist. LEXIS 15760, at *13-14 (S.D. Ind. Feb. 27, 2009); *see also Conner v. Howe*, 344 F. Supp. 2d 1164, 1170 (S.D. Ind. 2004) ("[U]nder the Act, creditors – those persons or entities who extended the credit in the first instance and who seek to collect their own debts are not subject to the provisions of the FDCPA.").

Here, Plaintiffs acknowledge that Countrywide was the creditor-mortgagee (Compl. ¶ 51), and there is no allegation that Countrywide was not trying to collect its own debt in instituting the foreclosure proceedings.  Moreover, Plaintiffs' conclusory allegation that Defendants are "debt collectors" fails to allege any factual basis for which to conclude that Defendants fit within that definition.   Thus, Plaintiffs have failed to plead a plausible FDCPA claim against Defendants.

In addition, by foreclosing on Plaintiffs' home, Countrywide was seeking to enforce its security interest, and such actions are not governed by the FDCPA.  In *Rosado v. Taylor*, the court noted that "[s]ecurity enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices."  324 F. Supp. 2d 917, 924 (N.D. Ind. 2004); *see also Crawford*, 2010 U.S. Dist. LEXIS 84995, at *22-23 ("In seeking foreclosure, Countrywide was therefore not acting as a debt collector for purposes of the FDCPA.").  According to the court, that distinction is "eminently sensible" because "[o]ne receiving debt collection letters may

collectors – generally are not subject to the FDCPA.") (internal citations omitted); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997) (stating that the term "debt collector" under the FDCPA does not "ordinarily include creditors who, directly or indirectly, try to collect debts owed them."); *Kevelighan v. Trott & Trott, P.C.*, 2010 U.S. Dist. LEXIS 68020, at *19-20 (E.D. Mich. July 7, 2010) (mortgagees are exempt from the FDCPA as "creditors").

agonize that she cannot comply with them, hence she needs the [FDCPA]'s protection.  One asked to comply with a security interest enforcement request, on the other hand, has the security that she can return . . . ."  *Rosado*, 324 F. Supp. 2d at 924-25.  In *Overton v. Foutty & Foutty, LLP*, this Court adopted the reasoning in *Rosado* in stating that "[i]f a person invokes judicial remedies *only* to enforce the security interest in property, then the effort is not subject to the FDCPA . . . .  But if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies."  2007 U.S. Dist. LEXIS 61705, at *17 (S.D. Ind. Aug. 21, 2007) ("The FDCPA 'was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have.'  In contrast, a party with a security interest may have a 'present right' in a particular secured property that another possesses" (*Id.* at *13-14.)).

Here, Defendants were seeking to enforce a security interest by initiating the foreclosure proceeding against Plaintiffs.  As Plaintiffs acknowledge, Countrywide sought only an *in rem* judgment against Plaintiffs.  (Ex. A, at 3.)  Accordingly, the FDCPA does not apply to the actions taken by Countrywide to enforce its security interest.

## CONCLUSION

For the foregoing reasons, Defendants Countrywide Home Loans, Inc., Bank of America, N.A., BAC GP, LLC, and BAC Home Loans Servicing, LP request that this Court dismiss Plaintiffs' Complaint with prejudice and enter such other relief as this Court deems necessary and appropriate.

Respectfully submitted,


/s/ Matthew R. Strzynski
Matthew R. Strzynski, Attorney No. 23765-15
KRIEG DeVAULT LLP
mstrzynski@kdlegal.com
12800 North Meridian Street, Suite 300
Carmel, Indiana  46032-9422
(317) 566-1110
FAX:  (317) 636-1507

Attorneys for Defendants Countrywide Home
Loans, Inc.; Bank of America, N.A.; BAC GP, LLC;
and BAC Home Loans Servicing, LP



Of counsel:

Richard Cullen, *pro hac vice pending*
J. William Boland, *pro hac vice pending*
Bryan A. Fratkin, *pro hac vice pending*
Brian E. Pumphrey, *pro hac vice pending*
McGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219
Phone: (804) 775-1000
Fax: (804) 775-1061
rcullen@mcguirewoods.com
wboland@mcguirewoods.com
bfratkin@mcguirewoods.com
bpumphrey@mcguirewoods.com


Bradley R. Kutrow, *pro hac vice pending*
McGUIREWOODS LLP
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina 28202-4011
Phone: (704) 343-2049
Fax: (704) 373-8935
bkutrow@mcguirewoods.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on this 10th day of November, 2010.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  For those parties which are not registered with the Court's electronic filing system, I certify that a copy of the foregoing has been served by depositing a copy of it in the United States mail, first class postage prepaid.

| | |
|---|---|
| Irwin B. Levin<br>Richard E. Shevitz<br>Eric S. Pavlack<br>Vess A. Miller<br>Gabriel A. Hawkins<br>ilevin@cohenandmalad.com<br>rshevitz@cohenandmalad.com<br>epavlack@cohenandmalad.com<br>vmiller@cohenandmalad.com<br>ghawkins@cohenandmalad.com<br><br>*Counsel for the Plaintiffs and Proposed Class* | Clifford T. Rubenstein<br>MAURER RIFKIN & HILL, P.C.<br>11550 North Meridian Street, Suite 115<br>Carmel, IN 46032<br><br>*Counsel for the Plaintiffs and Proposed Class* |

/s/ Matthew R. Strzynski