**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DWAYNE RANSOM DAVIS and MELISA DAVIS, on behalf of themselves and all others similarly-situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>COUNTRYWIDE HOME LOANS, INC.; BANK OF AMERICA, N.A.; BAC GP, LLC; and BAC HOME LOANS SERVICING, LP,<br><br>       Defendants. | Case No. 1:10-cv-1303-JMS/DML |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

In their effort to be excused from their pattern of racketeering activity—which involves a massive fraud on state courts using perjured affidavits—Defendants assert that (1) under the *Rooker-Feldman* doctrine, this Court cannot exercise subject matter jurisdiction over Plaintiffs' claims because the adjudication of this case impermissibly requires this Court to revisit a fraud-induced state court foreclosure judgment;[1] (2) Plaintiffs' claims are barred by the doctrines of res

---

[1] If this Court determines that it lacks subject matter jurisdiction under *Rooker-Feldman*, the Court would lack the power to address the remaining defenses raised by Defendants, such as the issues of res judicata and collateral estoppel.  *See, e.g., Gary v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("Where *Rooker-Feldman* applies, lower federal courts have no power to address other affirmative defenses, including *res judicata* . . . ." ); *Taylor v. Fed. Nat'l Mortgage Ass'n*, 374 F.3d 529, 535 (7th Cir. 2004) (same). Defendants' arguments on those defenses—without acknowledgment of the Court's potential inability to address those issues—suggest that Defendants either do not expect to prevail on their *Rooker-Feldman* arguments or, alternatively, that they hope the Court may nonetheless address issues that it would lack the power to consider.  In any event, for the reasons set forth below, the Court should reject all of Defendants' defenses because the *Rooker-Feldman* doctrine does not apply and Defendants' remaining defenses lack merit. If the Court determines that *Rooker-Feldman* applies, however, then the Court would

judicata and collateral estoppel; (3) Plaintiffs fail to allege a nexus between Defendants' pattern

of racketeering activity and Plaintiffs' injuries; (4) Plaintiffs do not denominate the specific

subsection of the Racketeer Influenced and Corrupt Organizations Act ("RICO") upon which

their RICO claim is premised; and (5) Plaintiffs' claims under the Fair Debt Collections Practices

Act ("FDCPA") fail because Defendants are not "debt collectors" within the FDCPA and

because the FDCPA does not apply to actions to enforce security interests.  However,

Defendants' arguments ignore adverse Seventh Circuit authority, ignore the *Rooker-Feldman* test

utilized by the Seventh Circuit, ignore that Defendants' fraudulent concealment of their

racketeering activity prevents the application of res judicata and collateral estoppel, and ignore

the weight of authority addressing their FDCPA arguments.  For these reasons and those stated

below, this Court should deny Defendants' Motion to Dismiss.

## I.   Factual Background

Dwayne Ransom Davis and Melisa Davis ("Plaintiffs") mortgaged their Knightstown,

Indiana home to Mortgage Electronic Registration Systems, Inc. ("MERS") in March 2007.

Compl. ¶ 51, ECF No. 1.  The promissory note underlying Plaintiffs' mortgage defined

Countrywide Home Loans, Inc. ("Countrywide") as the lender.  Compl. ¶ 51.  After Plaintiffs

allegedly defaulted on their monthly mortgage payments, Countrywide filed a Complaint to

Foreclose Mortgage in the Rush County, Indiana Superior Court under Cause Number 70D01-

0802-MF-017 (the "Davis Foreclosure Action").  Compl. ¶ 52.  Because of Countrywide's

utilization of MERS for the Davis mortgage, however, Countrywide's prosecution of the Davis

Foreclosure Action varied significantly from traditional foreclosure prosecutions and employed

illegal means to prematurely gain title to and possession of the Davis' property.

---

lack subject matter jurisdiction to consider any of the other issues raised in Defendants' Motion to
Dismiss. *Gary*, 82 F.3d at 1365.

### A.      Problems Induced by Countrywide's Utilization of MERS

MERS allows banks to shortcut traditional laws governing mortgages and to quickly transfer, bundle, and securitize mortgage loans.[2]  Compl. ¶ 29.  However, MERS was poorly conceived, sloppily run, and routinely lost track of mortgage interests.  Compl. ¶¶ 36-37. Because of the numerous defects associated with the operation of the MERS system they had created, lenders wishing to foreclose on mortgages frequently encountered difficulties in accurately identifying the holders of mortgages and in locating and presenting documents that were essential to the successful prosecution of foreclosure proceedings.  Compl. ¶ 38.

As the number of borrowers defaulting on their mortgages steadily increased during the infamous collapse of the housing bubble, Defendants were faced with the dilemma of how to foreclose on MERS-held mortgages while simultaneously keeping up with the increasing personnel demands needed to process such foreclosures.  Compl. ¶ 42.  Defendants recognized that actually identifying the correct holders of the mortgages and notes, locating the mortgage and note documents, ensuring that the mortgages and notes were validly assigned to the holders, and ensuring that all proper information and documentation was accurately assembled before initiating foreclosure proceedings was not cost-effective for them.  Compl. ¶ 41.

Instead of hiring and training employees capable of locating, reviewing, and, if possible, presenting the documents—and taking the time to proffer truthful affidavits necessary to prevail in foreclosure actions—Defendants hired "robo-signers" and directed them to perjure thousands

---

[2] Despite the fact that the troubled operation of MERS rather than its legal infirmities contributed to Defendants' racketeering activities, Defendants argue that MERS is legally sound.  *See* Defs.' Br. at 4 n.2 (citing *Cervantes v. Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 87997, at *29-34 (D. Ariz. Sept. 23, 2009)).  Plaintiffs' claims in this action do not challenge the soundness of MERS, nor do their claims turn upon MERS' legal status.  Insofar as Defendants appear to take any comfort from decisions approving MERS, however, it bears emphasis that numerous courts have concluded that MERS is legally infirm.  *See, e.g., Mortg. Elec. Registration Sys., Inc. v. Sw. Homes of Ark., Inc.*, 301 S.W.3d 1 (Ark. 2009); *Mortg. Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704 N.W.2d 784 (Neb. 2005); *Landmark Nat'l Bank v. Kesler*, 216 P.3d 158 (Kan. 2009).

of affidavits on their behalves.  Compl. ¶¶ 44-47.  Defendants' foreclosure attorneys were aware

that the affidavits they were filing for Defendants' were perjured and that Defendants' affiants

could not possibly have personal knowledge of the information sworn to in their affidavits.

Compl. ¶ 49.

**B.      The Perjured Affidavit of Keri Selman**

On April 4, 2008, Countrywide moved for summary judgment in the Davis Foreclosure

Action.  Compl. ¶ 53.  In support of its Motion for Summary Judgment, Countrywide attached

the March 17, 2008 affidavit of Keri Selman ("Selman"), which provided:

I, Keri Selman, being first duly sworn on oath, depose and state as follows:

1.      I am *Assistant Vice President of the Plaintiff-Mortgagee* herein and in that
capacity *am familiar with the books and records of Plaintiff, have personally
examined the same*, and am duly authorized to make this affidavit on behalf of
Plaintiff and, if sworn as a witness, could competently testify to the facts
contained herein.

2.      *I have read the allegations in the Complaint, examined all exhibits, have
personal knowledge of the facts stated therein and state that all of the allegations
of the Complaint are true of my own personal knowledge.*

3.      The Plaintiff is the holder of the promissory note sued upon and of the
mortgage given as security thereof.

4.      The default of said Mortgagors occurred on the 1st day of October, 2007
and that said default has not been cured and Plaintiff has elected to claim the
entire balance due in accordance with the terms of the mortgage and promissory
note, and that there is now due and owing the Plaintiff the following sums plus
attorneys fees and court costs;

5.      The mortgage lien and interest of the Plaintiff is prior to and superior to
the lien and interest of all Defendants herein.

6.      To the best of affiant's knowledge, information and belief no defendant in
said cause is now, nor was at the time of the filing of this action in any branch of
the military or naval service of the United States.

*I affirm, under the penalties of perjury, that the forgoing representations are true.*

4

Compl. ¶ 54 (internal figures omitted) (emphasis added).

Despite her recognition that her statement was subject to the penalties of perjury, Selman is a notorious robo-signer, and routinely signed perjured affidavits like this one for submission to courts in support of foreclosures. Compl. ¶¶ 55-56. These perjured affidavits are essential to Countrywide's conspiracy underlying the racketeering allegations in Plaintiffs' Complaint. *See* Compl. ¶¶ 55-56. Indeed, Selman has signed perjured affidavits in support of foreclosures on behalf of numerous different lenders and has identified herself, under oath, as (1) a vice president of Countrywide, (2) a vice president for Wells Fargo Bank, N.A., (3) an attorney in fact for the Bank of New York, and (4) an assistant vice president of MERS. Compl. ¶ 57.

Commenting on Selman's prolific career as a robo-signer during a foreclosure action predicated on one of Selman's affidavits, Judge Arthur M. Schack of the Supreme Court of New York remarked that "Ms. Selman is a milliner's delight by virtue of the number of hats she wears." Compl. ¶ 58. Judge Schack also noted, "Plaintiff's application is the third application for an order of reference received by me in the past several days that contains an affidavit from Keri Selman" and—recognizing the probability of subterfuge and perjury—conditioned his grant of the foreclosure order in question on Selman's production of an affidavit describing her employment for the last three years. Compl. ¶ 58. Tellingly, Selman failed to provide the affidavit requested by Judge Schack. Compl. ¶ 58.

Consistent with Judge Schack's observations and Selman's prolific career as a robo-signer, Selman's affidavit in the Davis foreclosure was perjured. Because it would have been impossible for Selman to have read the allegations in the Complaint underlying the Davis foreclosure, to have examined all of the exhibits attached thereto, and to be familiar with Defendants' books and records—as she specifically swore in Paragraphs One and Two of her

affidavit—while preparing the thousands of affidavits in other cases, Selman's statements were false.  Compl. ¶ 59.

### C.     The Perjured Affidavit of Melissa Viveros

On July 20, 2009, Countrywide filed an Updated Affidavit of Mortgage and Non-Military Affidavit in the Davis Foreclosure Action.  Compl. ¶ 62.  This affidavit was executed by Melissa Viveros ("Viveros") on July 2, 2009, was submitted in furtherance of Countrywide's request that Davis' home be sold in a sheriff's sale, and provides:

I, Melissa Viveros, being first duly sworn on oath, depose and state as follows:

1. I am a *Vice President of the Plaintiff-Mortgagee* herein and in that capacity *am familiar with the books and records of Plaintiff, have personally examined the same*, and am duly authorized to make this affidavit on behalf of Plaintiff and, if sworn as a witness, could competently testify to the facts contained herein.

2. *I have read the allegations in the Complaint, examined all exhibits, have personal knowledge of the facts stated therein and state that all of the allegations of the Complaint are true of my own personal knowledge.*

3. The Plaintiff is the holder of the promissory note sued upon and of the mortgage given as security thereof.

4. The default of said Mortgagors occurred on the 1st day of May, 2008 and that said default has not been cured and Plaintiff has elected to claim the entire balance due in accordance with the terms of the mortgage and promissory note, and that there is now due and owing the Plaintiff the following sums plus attorneys fees and court costs;

5. The mortgage lien and interest of the Plaintiff is prior to and superior to the lien and interest of all Defendants herein.

6. To the best of affiant's knowledge, information and belief no defendant in said cause is now, nor was at the time of the filing of this action in any branch of the military or naval service of the United States.

*I affirm, under the penalties of perjury, that the forgoing representations are true.*

Compl. ¶¶ 62-63 (internal figures omitted) (emphasis added).

As suggested by the fact that Viveros' affidavit is a virtual carbon copy of Selman's affidavit, Viveros' affidavit is also perjured in a number of respects.  For example, despite her sworn statement, Viveros was not a vice president for Countrywide and was not even employed by Countrywide when she made this statement.  Compl. ¶ 64.  Rather, Viveros has been employed by BAC GP, LLC as a general partner of BAC Home Loans Servicing, LP since July 2007.  Compl. ¶ 64.

Also, like Selman, Viveros is a known robo-signer.  Compl. ¶ 66.  Because of the volume of affidavits she handles, it is impossible for Viveros to have read the allegations in the complaint underlying the Davis Foreclosure Action and to have examined all of the exhibits attached to it.  Compl. ¶ 67.  Thus, Viveros' affidavit contains false statements made in furtherance of an effort to expedite the Davis Foreclosure Action by avoiding the time and expense of obtaining and reviewing the mortgage documents and providing factually true affidavits from individuals with the actual knowledge of the necessary documents and facts.  *Id.*

The Selman and Viveros affidavits were sent to and filed in the court in the Davis Foreclosure Action and were sent among and between Defendants and their counsel in that action through interstate mails and wires, all in furtherance and perpetuation of the Defendants' fraud and racketeering activity (the "Mortgage Foreclosure Mill Enterprise").  Compl. ¶¶ 3, 72, 75, 78.  The Mortgage Foreclosure Mill Enterprise's racketeering activity thus was facilitated by the use of the mails and electronic wire systems, in that they used the mails to file and serve perjured affidavits and other court documents, and used mail, email, and phone communications with one another to facilitate their scheme.  Compl. ¶ 87.

As a result of the perjured testimony contained in Viveros' affidavit and Selman's affidavit, Countrywide was able to prematurely foreclose on the Davis property and to sell it in a

sheriff's sale.  Compl. ¶ 70.  Had Countrywide not conspired with the other Defendants, Viveros, Selman, and its attorneys to submit such perjured testimony, the Davis foreclosure would have proceeded at a slower pace necessary to properly identify the correct corporate representatives, obtain and properly review the documents associated with the Davis loan, and have the proper affidavit executed.  Plaintiffs would have been able to continue searching for alternatives that might satisfy the lender, and, importantly, Plaintiffs would have retained ownership and remained in possession of their property and not been prematurely evicted from their home.  *See* Compl. ¶¶ 6, 71.

## II.  Procedural History

Plaintiffs filed their Class Action Complaint in this case on October 19, 2010.  Plaintiffs' Complaint includes claims under RICO and the FDCPA, and also alleges that Defendants fraudulently concealed their improper actions.  Compl. ¶¶ 72-102.  As acknowledged by Defendants, Plaintiffs neither seek to reopen nor disturb the Davis foreclosure adjudication in any way, but, instead, seek monetary damages arising from the conspiracy to prematurely evict Plaintiffs from their home based upon perjured affidavits.  Compl. ¶ 6.

On November 11, 2010, Defendants moved to dismiss this action.  Defendants assert that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, are barred by the doctrines of collateral estoppel and res judicata, contain deficiencies in their RICO allegations, and fail to allege a proper FDCPA claim.  Defs.' Br., ECF No. 14.  All of the Defendants' arguments fail.

## III. Argument

### A.      Standard of Review

Defendants have moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  The plaintiff bears the burden of

establishing subject matter jurisdiction. *Stokes v. Norfolk S. Ry. Co.*, 99 F. Supp. 2d 966, 970 (N.D. Ind. 2000). However, when a motion to dismiss under Rule 12(b)(6) accompanies a motion to dismiss under Rule 12(b)(1), and a defendant challenges subject matter jurisdiction based upon the face of the complaint, the motion to dismiss is analyzed under the 12(b)(6) standard, and all well-pleaded factual allegations in the complaint are presumed true. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

A court addressing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure must assume as true all well-pleaded facts set forth in the complaint, construe the allegations liberally, and draw all inferences in the light most favorable to the plaintiff. *Logan v. Wilkins*, No. 1:09-cv-0282-DFH-DML, 2009 WL 2351718, at *1 (S.D. Ind. July 30, 2009) (citing *Brown v. Budz*, 398 F.3d 904, 908-09 (7th Cir. 2005)). A formalistic recitation of the elements of a cause of action is not enough to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. Nonetheless, dismissal is only warranted if the factual allegations seen in the light most favorable to the plaintiff do not plausibly entitle the plaintiff to relief. *Id.* at 561-62; *see also, Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

**B.**   **The *Rooker-Feldman* Doctrine Does Not Deprive This Court of Subject Matter Jurisdiction Over Plaintiffs' Claims Because Plaintiffs' Claims Do Not Seek to Overturn a State Court Judgment and Are Not Inextricably Intertwined with a State Court Judgment.**

The *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced *and inviting district court review and rejection of those judgments*." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). In

*Hukic v. Aurora Loan Services*, 588 F.3d 420, 431 (7th Cir. 2009), the Seventh Circuit explained that "[i]n short, the [*Rooker-Feldman*] doctrine prevents a party from effectively trying to appeal a state-court decision in a federal district or circuit court."

In *Exxon Mobil*, the United States Supreme Court criticized lower courts for "constru[ing] [the *Rooker-Feldman* doctrine] to extend far beyond the contours of the *Rooker* and *Feldman* cases," and the Supreme Court reiterated that the doctrine is strictly "confined to cases of the kind from which the doctrine acquired its name." *Id.* at 283; *see also Lance v. Dennis*, 546 U.S. 459, 464 (2006) ("Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule."); *id.* at 463 (referring to the "warn[ing]" given to the lower federal courts in *Exxon Mobil*); *id.* ("The *Rooker-Feldman* doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction.").

The Supreme Court explained that the essence in both the *Rooker* and *Feldman* cases was that the plaintiffs "called upon the district court to overturn an injurious state-court judgment" and had essentially asked district courts to sit as courts of appeals over state-court judgments. *Id.* at 291. The Supreme Court emphasized that it is in this narrow circumstance only that *Rooker-Feldman* precludes a District Court from exercising jurisdiction. Indeed, the Supreme Court, quoting Seventh Circuit authority, emphasized that *Rooker-Feldman* does not even "stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court" and "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law

determines whether the defendant prevails under principles of preclusion.'" *Id.* at 293 (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). That is, where a plaintiff presents an independent federal claim that does not seek to overturn a state-court judgment, the issue is properly analyzed through the non-jurisdictional doctrines of preclusion, not the jurisdictional bar of *Rooker-Feldman*.

The Defendants' argument that this Court should dismiss for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine is wrong because Plaintiffs do not seek to overturn any state court judgment. As the Seventh Circuit has recognized, *Rooker-Feldman* does not apply where, as in this case, a plaintiff challenges only a defendant's actions in corrupting the state court proceeding in which the judgment was obtained.

Defendants attempt to redraft the Plaintiffs' complaint in order to trigger the application of *Rooker-Feldman* through their bald assertion that "[w]hile Plaintiffs claim that they do not seek to overturn the judgment in the Foreclosure Action, it is clear that they are trying to do precisely that." Defs.' Br. at 8. However, Plaintiffs do *not* seek to set aside the underlying state court foreclosure judgment, nor do they seek to regain possession of their home. *See* Compl. ¶ 6; Defs.' Br. at 4. As Defendants concede, the Complaint expressly states that the Plaintiffs "do not seek to reopen or disturb" any foreclosure judgments "and instead seek only monetary damages as a result of being prematurely evicted from their houses based on perjured affidavits." *See* Defs.' Br. at 4. In sum, Plaintiffs seek monetary damages for being prematurely evicted from their home as a result of Defendants' racketeering activity and for damages under the FDCPA— issues that were not addressed in the state court foreclosure action. Plaintiffs' claims clearly do not seek to set aside the state court foreclosure judgment and therefore are not barred by *Rooker-Feldman*.

11

In *Hukic*, the Seventh Circuit held that *Rooker-Feldman* did *not* bar claims arising from conduct in connection with an earlier state court foreclosure action because "[n]o one in this case is attempting to challenge the rulings in the state court foreclosure proceeding" or to challenge "the foreclosure judgment or seek to resume foreclosure proceedings." 588 F.3d at 431-32. All of the *Rooker-Feldman* decisions upon which Defendants rely are distinguishable because they involved challenges to the validity or enforceability of state court judgments.[3] Like *Hukic*, and unlike Defendants' cited cases, the claims raised in this action do not seek to overturn any state court judgments, nor are they inextricably intertwined with any state court decision. The Seventh Circuit has repeatedly recognized that *Rooker-Feldman* does not bar actions such as the present matter, which bring statutory claims challenging the *process* by which a state court judgment was obtained.

---

[3] *See Stanley v. Hollingsworth*, 307 Fed. Appx. 6, 9 (7th Cir. 2009) (applying *Rooker-Feldman* because the plaintiff asked the federal court to "review and set aside" the state court judgment); *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004) (plaintiff filed pleading in federal action entitled "Complaint to Vacate Judgment…" and "requested the federal court to set aside the state court's judgment of foreclosure"); *Manley v. City of Chicago*, 236 F.3d 392, 398 (7th Cir. 2001) (police officer's federal action "challenge[d] the state court system's decision"); *Davis v. Allen County Office of Family & Children*, No. 96-1953, 1997 U.S. App. LEXIS 10806, at *3 (7th Cir. May 6, 1997) (plaintiff "was seeking relief from the state court judgment that terminated his [parental] rights"); *Garry v. Geils*, 82 F.3d 1362, 1370 (7th Cir. 1996) (holding that *Rooker-Feldman* barred plaintiffs from "attempting to … challenge a state court judgment"); *GASH Assoc. v. Village of Rosemont, Ill.*, 995 F.2d 726, 729 (7th Cir. 1993) (federal action sought to "set aside" state court judgment and presented for review an issue that "[b]oth trial and appellate courts in Illinois considered and rejected …"); *Linner v. Wells Fargo Home Mortg., Inc.*, No. 3:08-cv-558-TS, 2009 WL 2591688, at *3 (N.D. Ind. Aug. 20, 2009) (applying *Rooker-Feldman* because federal complaint asked district court to "review and set aside the foreclosure judgment"); *Crawford v. Countrywide Home Loans, Inc*., No. 3:09-cv-247-PPS-CAN, 2010 WL 3273715, at *5-12 (N.D. Ind. Aug. 16, 2010) (applying *Rooker-Feldman* to bar claims attacking a state court judgment but not applying *Rooker-Feldman* to bar other statutory claims, including RICO claim, arising from state court proceedings); *Blanford v. St. Vincent Hosp. & Health Care Ctr.*, No. 1:08-cv-1094-DFH-TAB, 2009 U.S. Dist. LEXIS 15760, at *11-12 (S.D. Ind. Feb. 27, 2009) (*Rooker-Feldman* bars claim in federal court alleging fraud on state court and asking federal court to "relieve a party" from the state court judgment); *Warden v. Nw. Bank of Rockford*, No. 03 C 50186, 2003 WL 22872118, at *2 (N.D. Ill. Dec. 3, 2003) (applying *Rooker-Feldman* because the Plaintiffs "seek to quiet title to the Carefree Property and to 'reopen' the state court forfeiture proceeding …[by] asking [the federal] court to act in an appellate capacity to reverse the state court judgment").

For example, in *Loubser v. Thacker*,  440 F.3d 439, 441 (7th Cir. 2006), the plaintiff brought an action under 42 U.S.C. § 1983 in federal court contending that the defendants had conspired in her earlier state court divorce proceedings, which resulted in a state court judgment that allegedly deprived her of property.  Judge Posner concluded that the separate claim "that a defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine." 440 F.3d at 441-42 (citing *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)).

Similarly, in *Davit v. Davit*, 173 Fed. Appx. 515 (7th Cir. 2006), the Seventh Circuit expanded *Loubser* beyond the confines of 42 U.S.C. § 1983 and held that *Rooker-Feldman* does not bar RICO claims that arise from prior state court proceedings:

> John Davit argues that the district court did not lack jurisdiction over his federal complaint because he was not seeking review or rejection of state court rulings. . . . We recently reaffirmed our precedent holding that the *Rooker-Feldman* doctrine does not apply to claims that a "defendant in a civil rights suit "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." . . . Thus, *though the state court judgment is related to his RICO claim, he is not jurisdictionally barred by Rooker-Feldman*.

173 Fed. Appx. at 517 (internal citations omitted) (emphasis added). As the Seventh Circuit also stated in *Nesses*, *Rooker-Feldman* does not apply simply because the remedy sought in the federal court action may be related to the state court judgment:

> Were Nesses merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the [*Rooker Feldman*] doctrine would indeed bar his claim.  But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated with politics, *then he can, without being blocked by the Rooker-Feldman doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm*.

68 F.3d at 1005 (emphasis added) (citing *Nelson v. Murphy*, 44 F.3d 497, 503 (7th Cir. 1995)).

That the state court foreclosure judgment is related to Plaintiffs' injury in the present case is

insufficient to invoke *Rooker-Feldman*.  *Rooker-Feldman* does not bar the Plaintiffs' claims because a judgment entered in favor of Plaintiffs in the case would not invalidate any state court foreclosure judgment.

In *Verdone v. Taylor County Co-op Credit Union*, 12 F.3d 1101 at *1 (7th Cir. 1993), the plaintiff brought a federal lawsuit that "stems from a state action for foreclosure and sale of Verdone's property" in which a "judgment of foreclosure on Verdone's property was entered by [the state court], and the property was sold at a sheriff's sale."  Much like the present action, the complaint filed in the subsequent federal lawsuit brought racketeering claims against parties who participated in obtaining the foreclosure judgment. The Court first summarized the operation of the *Rooker-Feldman* doctrine, explaining that the "Rooker-Feldman doctrine asks: 'is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party?  If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction . . . .'"  *Id*. at *2 (citing *GASH*, 995 F.2d at 728).

In applying the *Rooker-Feldman* doctrine in *Verdone*, the Seventh Circuit distinguished the racketeering or conspiracy-based claims from other claims that did not involve a conspiracy. The Court concluded that all of the claims other than the conspiracy-based claims fell into the "former" category and were barred by *Rooker-Feldman* because "the district court was in essence being called upon to set aside a state judgment—the judgment confirming the sale of Verdone's property—which it lacked jurisdiction to do."  *Id.*  However, the Seventh Circuit held that the conspiracy-based claims, including the racketeering claims—which, like the present matter, challenged the *process* by which the state court judgment had been obtained—were not

14

barred by *Rooker-Feldman* because those claims were not inextricably intertwined with the state court matter:

> The *Rooker-Feldman* doctrine does not bar federal jurisdiction over Verdone's claims that the defendants *conspired* to deprive him of his civil rights and *to engage in racketeering activities*. Verdone did not raise these claims in state court, and they are not inextricably intertwined with the claims that were addressed by the state court.

*Id*. at *3 (emphasis added).

In *Marshall v. Grant*, 521 F. Supp. 2d 240 (E.D.N.Y. 2007), the district court likewise held that the claims based upon perjured testimony that led to an unfavorable judgment in state court were not barred by *Rooker-Feldman*. In *Marshall*, the plaintiff brought claims against his former spouse and family members based upon their perjured testimony in his state court divorce proceedings regarding the value of a family business, their ownership interests in that business, and tax issues regarding that business, all of which led to an unfavorable judgment in the divorce proceedings. The district court summarized those allegations of perjury underlying the claims in the subsequent federal lawsuit as follows:

> During the course of the matrimonial trial of Marshall and Grant, the Individual Defendants gave perjured testimony concerning, inter alia, the incorporation of NGA. As a result of this perjured testimony, the trial judge determined that Grant had a separate property interest in NGA. … In addition, Plaintiff was damaged by Selmalee Grant's trial perjury in 2001 that resulted in a judgment being entered against Plaintiff in the sum of $54,500.00.

521 F. Supp. 2d at 242. The district court recognized, however, that "Marshall does not mention this judgment in his ad damnum clause and asks for no relief with respect thereto." *Id.* at 242 n.1. The district court also recognized that the alleged "cause of his injury was Defendants' . . . alleged perjury, fraud and misrepresentations" in the state court proceeding. The court held that the claims based on that misconduct were not barred by *Rooker-Feldman* because "[t]hese are the type of claims held by the *Exxon Mobil* Court to be independent from the state court

judgment because they allege fraud in the procurement of the judgment and not just that the state court issued an incorrect opinion." *Id.* at 244-45 (citing *Exxon Mobil*, 544 U.S. at 293).

The present case brings similar claims. It seeks damages based upon the Defendants' perjury in procuring the state court judgment. *Rooker-Feldman* does not bar such claims. *Blackburn v. Calhoun*, No. 207CV966, 2008 WL 850191, at *18-21 (N.D. Ala. Mar. 4, 2008) (explaining that under *Rooker-Feldman* a federal court lacks subject matter jurisdiction "only if the relief requested requires it to determine that the state court decision was wrong, or otherwise should be voided" and applying *Davit* to hold that *Rooker-Feldman* did not bar RICO claims in an action in which Plaintiff "alleges that he is not challenging the state court judgments against him" and "has not plead any interest in challenging the merits of them.").

In *Brown v. First Nationwide Mortgage Corp.*, 206 Fed. Appx. 436, 437 (6th Cir. 2006), the Sixth Circuit held that a federal action that, again like the present matter, brought claims against a lender "claiming that First Nationwide had procured the state court mortgage decree by fraud" but did not seek to overturn the decree itself was not barred by *Rooker-Feldman*. More recently, the district court in *Whittiker v. Deutsche Bank National Trust Co.*, 605 F. Supp. 2d 914 (N.D. Ohio 2009), held that *Rooker-Feldman* did not bar an action that brought state and federal statutory claims—including state RICO claims—that were based upon a lender's procuring a state court foreclosure decree by fraud, but that did not seek to undo the foreclosure decree itself. In *Whittiker*, much like the present matter, the plaintiffs brought suit against various lenders challenging misrepresentations made in prior state court foreclosure actions against them. The court held that *Rooker-Feldman* did not bar such claims:

> A claim that the state court judgment was procured by the alleged wrongdoing of the defendant is an independent claim over which the district court may assert jurisdiction, even if those independent claims deny a legal conclusion of the state court. … In *Todd v. Weltman, Weinberg & Reis Co.*, the Sixth Circuit found that

the *Rooker-Feldman* doctrine did not deprive the district court of jurisdiction over plaintiff's federal claim that defendant filed a false affidavit in a state court garnishment proceeding. *Todd*, 434 F.3d at 437. In *Brown v. First Nationwide Mortgage Corporation*, the Sixth Circuit held that a federal plaintiff's allegations of fraud in connection with a state court proceeding does not constitute a complaint regarding the foreclosure decree itself, but concerns the defendant's actions that preceded the decree, and therefore plaintiff's claim that the foreclosure decree was produced by fraud is not barred by *Rooker-Feldman*.

605 F. Supp. 2d at 921-22. Using language that applies directly to the present case, the district court in *Whittiker* held that *Rooker-Feldman* did not bar the plaintiff's statutory claims that arose from defendants' submission of false information to procure a foreclosure judgment:

In this case, the source of the injury claimed by plaintiffs is the allegedly false information provided by defendants in the underlying foreclosure proceedings to obtain judgments, not the foreclosure judgments themselves. Because plaintiffs' alleged injuries are caused by the alleged wrongful acts of defendants in foreclosure proceedings and not the foreclosure judgment, the Court concludes that Whittiker and Kimball assert independent claims that are not barred by *Rooker-Feldman* and over which the Court may assert subject matter jurisdiction.

605 F. Supp. 2d at 922 (emphasis added). Once again, the Plaintiffs in the present matter do not challenge the foreclosure judgment itself. Instead, they challenge the methods by which the Defendants obtained that judgment through the use of perjured affidavits that allowed the foreclosure judgment to be entered sooner than Defendants would have been able to obtain that judgment if they had taken the time necessary to obtain, review, and present accurately the mortgage information that was the subject of the perjured affidavits.

Finally, with respect to the Plaintiffs' FDCPA claims in particular, numerous courts have specifically found FDCPA claims are not inextricably intertwined with underlying state court proceedings, and therefore are not barred by *Rooker-Feldman*. *See, e.g., McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp. 2d 1166, 1169-71 (D. Kan. 2007) (collecting and analyzing five post-*Exxon Mobil* decisions where courts considered the applicability of *Rooker-Feldman* to creditors who obtained judgments in state courts but had their collection practices

challenged under the FDCPA).  The court in *McCammon* concluded that "[t]hese courts all found

that *Rooker-Feldman* did not bar claims under the FDCPA where the plaintiff disputed the

collection practices utilized by the debt collector, not the validity of the state court judgment.  *Id.*

at 1169 (citing *Todd v. Weltman, Weinberg & Reis Co., L.P.A.,* 434 F.3d 432, 437 (6th Cir.

2006); *Anderson v. Gamache & Myers, P.C.,* 2007 WL 1577610 at *6 (E.D. Mo. May 31, 2007);

*Foster v. D.B.S. Collection Agency,* 463 F. Supp. 2d 783, 798 (S.D. Ohio 2006); *Wyles v.

Excalibur I, LLC,* 2006 WL 2583200 at *7 (D. Minn. 2006); *Senftle v. Landau,* 390 F. Supp. 2d

463, 470 (D. Md. 2005)).  *Rooker-Feldman* is not applicable to Plaintiffs' FDCPA claims.

### C.     The Doctrine of Res Judicata Does Not Apply to Plaintiffs' Claims.

Defendants claim that the doctrine of res judicata requires the dismissal of Plaintiffs'

Complaint because "Plaintiffs could have raised [the issues contained in their Complaint] as

defenses to the Foreclosure Action."  *See* Defs.' Br. at 10.  The doctrine of res judicata requires

the dismissal of a case when there is "(1) an identity of the parties or their privies; (2) identity of

the cause of action, and (3) a final judgment on the merits."  *Prochotesky v. Baker & McKenzie*,

966 F.2d 333, 334 (7th Cir. 1992).  However, as reflected in the cases cited below, even when

these elements are present, res judicata does not apply when the plaintiff was unaware of or

unable to discover facts supporting a subsequent claim at the time of the initial claim,

particularly where that lack of awareness was the result of a defendant's fraud.

In order to prevail in their claim that Plaintiffs could have raised their present claims in

the state court foreclosure action, Defendants must demonstrate that Plaintiffs had knowledge of

the facts that gave rise to their claims during the state foreclosure proceedings.  *See Doe v.

Allied-Signal, Inc.*, 985 F.2d 908, 914-15 (7th Cir. 1993) (concluding "[i]f the plaintiff is

unaware of facts when filing a complaint, res judicata will not bar subsequent litigation" and that

fraud precluded the non-movant from having the requisite knowledge); *see also Empress Casino Joliet Corp. v. Blagojevich*, 674 F. Supp. 2d 993, 1004 (N.D. Ill. 2009) (citing *Himel v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago,* 596 F.2d 205, 210 (7th Cir. 1979) ("Claim preclusion does not apply to claims that a party did not know about and could not have known about at the time of the prior suit."); *Doe v. Allied-Signal*, 985 F.2d at 914 (relying on *Himel* and holding that res judicata did not apply to bar plaintiff's second suit because plaintiff could not have discovered relevant information during first suit due to defendant's fraud).

In the present case, the Complaint expressly alleges that the Plaintiffs and class members did not know about Defendants' racketeering activity and could not have discovered it through reasonable diligence in their underlying foreclosure proceedings. *See* Compl. ¶¶ 82, 102. The Mortgage Foreclosure Mill Enterprise intentionally and fraudulently concealed their misconduct and the existence of their enterprise and racketeering activity from Plaintiffs and class members, and implemented the scheme in a manner that precluded detection. *See* Compl. ¶¶ 99-100.

Defendants do not even mention Plaintiffs' fraudulent concealment allegations in their res judicata discussion, nor do any of their cited cases address the applicability of res judicata when a plaintiff has pled an inability to previously raise fraud claims due to a defendant's fraudulent concealment. Under the holdings of the cases cited by Plaintiffs, Defendants cannot invoke res judicata due to their fraudulent concealment of their racketeering activity. *Doe*, 985 F.2d at 914-15; *Himel*, 596 F.2d at 210.

**D.      The Doctrine of Collateral Estoppel Does Not Apply to Plaintiffs' Claims.**

The Defendants' argument that the doctrine of collateral estoppel bars Plaintiffs' claims is wrong because the question of whether Defendants conspired to commit fraud neither was nor could have been adjudicated in the underlying state court action. For a previous adjudication to

have a preclusive effect on an issue in a subsequent adjudication, (1) the issue sought to be

precluded must be the same as that involved in the prior litigation, (2) the issue must have been

actually litigated, (3) the determination of the issue much have been essential to the final

judgment, and (4) the party against whom estoppel is invoked must be fully represented in the

prior action.  *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (quoting *La Preferida, Inc. v.

Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990)).

Defendants' collateral estoppel argument is based on the inaccurate characterization that

Plaintiffs' claims "involve the identical issues as the state court Foreclosure Action: the validity

of the foreclosure judgment."  *See* Defs.' Br. at 11.  Defendants' assertion is neither correct nor

supported by argument.  Plaintiffs' Complaint does not challenge the validity of the foreclosure

judgment; rather, it alleges that Defendants engaged in a conspiracy to prematurely obtain the

foreclosure of the Davis property by way of a pattern of racketeering activity—an issue that

neither was nor could have been addressed during the state court foreclosure proceedings due to

Defendants' fraudulent concealment.  *See* Compl. ¶¶ 82, 99, 100, 102.  Because the question of

whether Defendants conspired to commit fraud to improperly expedite foreclosure proceedings

neither was nor could have been addressed in Plaintiffs' underlying state court action, collateral

estoppel does not apply under these circumstances.  *See Empress Casino Joliet Corp.*, 674 F.

Supp. 2d at 1004.

Even if the issues raised in this action had been decided in the state court action—and

they were not—Plaintiffs are not collaterally estopped from bringing these claims due to

Defendants' fraudulent concealment of their racketeering activity and fraud.  As recognized in a

case cited by Defendants:

> In determining whether the use of collateral estoppel is appropriate, the court
> must consider whether the party against whom the judgment is pled has had a full

> and fair opportunity to litigate the issue and whether, under the circumstances, it
> would be otherwise unfair to permit the use of collateral estoppel.

*Infectious Disease of Indianapolis, P.S.C. v. Toney*, 813 N.E.2d 1223, 1228 (Ind. Ct. App. 2004)

(citing *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993); *Sims v. Scopelitus*,

797 N.E.2d 348, 351 (Ind. Ct. App. 2003)).  Plaintiffs have alleged at length that Defendants

fraudulently concealed their racketeering activity, *see* Complaint ¶¶ 82, 99, 100, 102, thereby

preventing Plaintiffs and the Class members from addressing this issue in the underlying

foreclosure cases.

In addition, it is well-established that collateral estoppel does not bar claims that, like

those in the present matter, involve fraud upon the courts in prior proceedings.[4] *Heiser v.*

*Woodruff*, 327 U.S. 726, 736 (1946) (collateral estoppel does not apply to a prior ruling that was

"procured by the fraud of a party"). In *A.D. Brokaw v. Weaver*, 305 F.3d 660, 670 (7th Cir.

2002), the Seventh Circuit rejected an attempt to use collateral estoppel to bar claims based upon

a state court judgment which, like the present matter, allegedly was obtained by fraud:

> What we have before us is a question involving the difference between a
> challenge concerning the "sufficiency of the evidence to establish probable cause"
> and the integrity of the evidence used to establish probable cause. The former
> action is barred by collateral estoppel, while the latter is not.

(emphasis added, internal citations omitted). The Seventh Circuit then rejected the collateral

estoppel argument because the plaintiff had "made specific and detailed allegations concerning

not only the purported false statements, but the motive underlying those statements." *Id*.  The

claims in the present case also belong to that latter category, which are not barred by collateral

estoppel because they too challenge the "integrity of the evidence" used to establish the state

court judgment and because the Complaint contains specific and detailed allegations regarding

---

[4] None of the cases cited by Defendants address the application of collateral estoppel where the defendant was alleged to have fraudulently concealed facts underlying the subsequent claims.

the false statements in particular, as well as the overall scheme underlying those false statements. Compl. ¶¶ 54-69, *passim*.

State courts around the country have reached the same conclusion. For example, in *Matsura v. E.I. du Pont de Nemours & Co.*, 73 P.3d 687, 697 (Haw. 2003), the Hawaii Supreme Court, answering a question certified to it by the United States District Court for the District of Hawaii, held that collateral estoppel did not bar racketeering and other claims that were based upon allegations of fraudulent conduct in a prior state court proceedings. *See also Batrouny v. Batrouny*, 412 S.E.2d 721 (Va. Ct. App. 1991) ("By establishing fraud [in the prior state court proceeding], the husband's action may not be defeated by the wife's claim that he is collaterally estopped from challenging an issue which was tacitly determined in the prior divorce action") (citing *Slagle v. Slagle*, 398 S.E.2d 346, 350 (Va. Ct. App. 1990) ("Principles of collateral estoppel may not be invoked to sustain fraud")); *Hunt v. Auten*, No. 03-98-00515-CV, 2000 WL 28329, at *3 (Tex. App., Jan. 13, 2000) ("an earlier final judgment procured by fraud cannot give rise to a collateral estoppel"); *English v. English,* 70 P.2d 625, 629 (Cal. 1937) ("we conclude that the default judgment which was rendered in the municipal court action based upon certain matured installments of the separation contract, wherein the issue of fraud, coercion, and duress in procuring the execution of the agreement were neither pleaded nor determined, is not res judicata in this proceeding and does not estop the plaintiff from maintaining this suit to cancel the contract…"); *Olser Inst. v. Miller*, 934 N.E.2d 1266, 2010 WL 3799508, at *4 (Ind. Ct. App. 2010) ("Osler asserts that Miller obtained the Illinois judgment through fraud and, as such, he is not entitled to use that judgment as a shield to the Indiana claims.  Osler notes that, in the Consent Decree, Miller attached an affidavit in which he swore that he did not have any Osler trade secrets in his possession, custody, or control. . . . We certainly agree that a judgment

obtained through fraud cannot be used defensively") (emphasis added) (citing *Morris v. Jones*, 329 U.S. 545, 550-51 (1947)). Collateral estoppel does not apply to the Plaintiffs' claims in this matter because those claims arise from the perjured affidavits and the fraud on the court in the underlying state court matter.

### E. The Court Should Deny Defendants' Challenges to Plaintiffs' RICO Claims.

#### i. Plaintiffs have standing and have pleaded injury by reason of Defendants' wrongful acts.

Defendants assert that Plaintiffs have no standing to raise RICO violations because Plaintiffs have not alleged an injury by reason of Defendants' racketeering activity. Defs.' Br. at 11-13. Specifically, Defendants assert:

> Here, because Plaintiffs expressly disclaim any attempt to upset the foreclosure judgments, these judgments are valid and binding on them, regardless of whether the affidavits contained some inaccurate statements. In other words, Plaintiffs fail to plead that the allegedly improper activities of Defendants *caused* them any harm.

> In addition, Plaintiffs plead no facts to support their claim that the result, i.e., a judgment of foreclosure, would have been any different had the alleged inaccuracies in the underlying affidavit been discovered in the state court proceeding.

Defs.' Br. at 12 (emphasis original).

Defendants' argument ignores Plaintiffs' allegations that the harm caused by Defendants' actions was not that the foreclosure would have ultimately been decided differently, but that Defendants' racketeering activities permitted Defendants to obtain that judgment prematurely. In the wake of this fraud, Plaintiffs and other property owners were prematurely deprived of title and possession of their real estate, and prematurely thrown out of their homes. The Complaint alleges damages caused by Defendants' racketeering activity: "Although the fraudulent activity occurred in foreclosure proceedings, the Plaintiffs and Class do not seek to reopen or disturb the

judgments in those foreclosures, and *instead seek only monetary damages as a result of being prematurely evicted from their houses based on perjured affidavits.*" Compl. ¶ 6 (emphasis added); *see also* Compl. ¶¶ 92-93 (alleging that Defendants' racketeering activity permitted them to prematurely foreclose upon their property).

The Complaint specifically pleads an injury—Plaintiffs being prematurely deprived of their property—that flows from Defendants' pattern of racketeering activity. Defendants' motion to dismiss Plaintiffs' RICO claims for based upon a purported failure to allege an injury must fail.

### ii.    Plaintiffs properly plead RICO claims under subsections (c) and (d) of 18 U.S.C. § 1962.

Although Plaintiffs did not expressly denominate the specific subsection of RICO upon which they rely, it is obvious from the face of the Complaint that Plaintiffs rely on subsections (c) and (d) of 18 U.S.C. § 1962. The Court should therefore reject Defendants' assertion that Plaintiffs' RICO allegations must be dismissed because Plaintiffs did not list the specific subsection of RICO on which they rely.  Defs.' Br. at 13.

Subsection (c) of 18 U.S.C. § 1962 concerns participating in the conduct of an enterprise engaged in a pattern of racketeering activity, which has been alleged by Plaintiffs throughout the Complaint.  And subsection (d) of 18 U.S.C. § 1962 concerns conspiring to do that illegal conduct.  Plaintiffs have clearly alleged that Defendants conspired to conduct and participate in a pattern of racketeering activity, and thus are invoking 18 U.S.C. § 1962(d).  *See* Compl. ¶¶ 4, 56, 70.[5]

---

[5] The other two subsections of 18 U.S.C. § 1962 clearly are not applicable.  Subsection (a) concerns investment of money related to a pattern of racketeering activity, which has not been alleged by Plaintiffs, and subsection (b) concerns the acquisition in or control of an enterprise through racketeering activity, which has not been alleged by Plaintiffs.

24

While the two cases cited by Defendants indicate that a Plaintiff must specifically denominate the subsection of RICO upon which their complaint is based, the vast majority of cases hold that it is sufficient if the substance of the allegations set forth in a complaint makes clear the particular subsection of RICO that is being invoked. *See Price v. Dvorak*, No. 3:08-cv-34 RM, 2009 WL 692216, at *10 n.2 (N.D. Ind. Mar. 12, 2009) (concluding that the language of plaintiffs' complaint demonstrated that he was proceeding under subsections (c) and (d)); *Clark v. Integrity Fin. Group., Inc.*, No. TH00-0028-C-T/H, 2000 WL 988516, at *5 (S.D. Ind. July 17, 2000) (court reviewed the language of the complaint to discern which RICO subsections applied); *James v. Meow Media, Inc.*, 90 F. Supp. 2d 798, 812-13 (W.D. Ky. 2000) (concluding that plaintiffs were proceeding under subsection (c) of RICO based upon the language of the complaint); *Malinowski v. Playboy Enter., Inc.*, No. 87 C 0204, 1988 WL 17569, at *1 (N.D. Ill. Feb. 19, 1988) ("Where it is apparent from the complaint which section is intended, the court has in the past allowed the claim to stand.")

Finally, even if Defendants were correct—and they are not—that Plaintiffs are required to expressly denominate the specific subsection of RICO upon which they rely, at most a dismissal with leave to replead would be appropriate because a technical deficiency of that nature is easily remedied by repleading.  *See Crumpacker v. Civiletti*, 90 F.R.D. 326, 331-332 (N.D. Ind. 1981) (dismissal without prejudice proper when pleading deficiencies can be remedied by repleading).

## IV. The Court Should Deny the Defendants' Challenges to Plaintiffs' FDCPA Claims.

According to Defendants, Plaintiffs' FDCPA claims should be dismissed because (1) Defendants are not "debt collectors" within the meaning of the FDCPA because they are the

actual creditors; and (2) claims to enforce security interests are excluded from the FDCPA.  Both arguments fail.

The FDCPA provides a right of action for abusive practices by "debt collectors," which it defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Excluded from this definition is "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor."  15 U.S.C. § 1692a(6)(A).  Although this may, at most, prevent claims against Defendant Countrywide because it was the loan originator and named creditor, Defendants are flatly wrong to suggest that this exclusion extends to the remaining Bank of America Defendants (i.e. Bank of America, N.A.; BAC GP, LLC; and BAC Home Loans Servicing, LP), who only became involved with the Davis' loan after Bank of America acquired Countrywide in June 2008.  Compl. ¶ 12.

While some of the cases cited by Defendants and the legislative history of Section 1692a(6) of the FDCPA extend the creditor exemption to mortgage servicers and assignees in certain circumstances, this exemption is not absolute and is not applicable in the present case.  According to the legislative history and cases relying on it, this extension only applies to "mortgage service companies and others who service outstanding debts for others, ***so long as the debts were not in default when taken for servicing*** … ."  S. REP. 95-382, *3-4 (1977) (emphasis added); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing legislative history and noting that creditor exemption only applies to mortgage servicers and assignees who were engaged prior to loan going into default); *Robbins v. Mortgage*

26

*Electronic Reg. Sys., Inc.*, No. 1:09-CV-295, 2009 WL 3757443 at *5 (W.D. Mich., Nov. 9, 2009) (same).

In the present case, the Plaintiffs allegedly defaulted on their Countrywide loan in October 2007. *See* Complaint to Foreclose Mortgage in the Davis Foreclosure Action, Exhibit A to Compl., ¶ 6. But it was not until June 2008—more than half a year later—that Bank of America took over Countrywide, so the Davis' debt was already in default at the time Defendants Bank of America, N.A., BAC GP, LLC, and BAC Home Loans Services, LP had any involvement with the Davis loan and mortgage. Compl. ¶ 12. Under the clear legislative history and cases applying it, the Bank of America Defendants therefore are not excluded from the definition of "debt collector" and therefore are not insulated from an action under the FDCPA. *See, e.g., Robbins*, 2009 WL 3757443 at * 5 ("[T]he authority cited by Defendants does not hold that mortgage servicing companies are categorically exempt from liability under the FDCPA. It holds that a mortgage servicing company is exempt *if* the mortgage was not in default at the time that it began servicing the loan.") (citing *Perry*, 752 F.3d at 1208; *Scott v. Wells Fargo Home Mort'g, Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003) (emphasis in original)).

The Defendants' second attack on Plaintiffs' FDCPA claims—that the FDCPA does not apply to actions to enforce security interests—ignores the majority view from numerous circuit courts of appeals reaching precisely the opposite conclusion. Although the Seventh Circuit has not addressed this issue, "nearly all of the circuit courts that have addressed the applicability of the FDCPA to the enforcement of security interests have held that a person against whom a security interest is enforced is entitled to the protections of the FDCPA." *See*, *The Protective Scope of the Fair Debt Collection Practices Act: Providing Mortgagors the Protection They Deserve From Abusive Foreclosure Practices*, 94 Minn. L. Rev. 1269, 1301 (April 2010) (citing

*Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 375 (4th Cir. 2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 229 (3d Cir. 2005); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998); *Law Offices of David J. Stern, P.A. v. Martinez (In re Martinez)*, 271 B.R. 696, 700 (S.D. Fla. 2001), *aff'd per curiam*, 311 F.3d 1272 (11th Cir. 2002)).

The reasoning in these cases is compelling.  For example, the Fourth Circuit in *Wilson* rejected the defendants' argument that the FDCPA did not apply to its actions in a foreclosure proceeding, finding that the debtor's "'debt' remained a 'debt' even after foreclosure proceedings commenced."  443 F.3d at 376 (citing *Piper*, 396 F.3d at 234).  The court reasoned:

> Defendants' argument, if accepted, would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt. We see no reason to make an exception to the Act when the debt collector uses foreclosure instead of other methods.

*Id.* (citing *Piper,* 396 F.3d at 236 ("We agree with the District Court that if a collector were able to avoid liability under the [Act] simply by choosing to proceed *in rem* rather than *in personam,* it would undermine the purpose of the [Act].")(internal quotation marks omitted)).

It is clear from the face of the Complaint in the Davis Foreclosure Action that Countrywide sought to collect a debt through the foreclosure action.  That Complaint and the perjured affidavits of Selman and Viveros are replete with references to the promissory note executed by the Plaintiffs, and the Plaintiffs' alleged default on the note was the basis for the Davis Foreclosure Action.  Under the majority view, the fact that Defendants sought to collect this debt through the enforcement of their security interest does not change the fact that Defendants were collecting a debt, and does not insulate their collection abuses from the FDCPA.

## V.  Conclusion

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny

Defendants' Motion to Dismiss.


DATED: December 13, 2010                    Respectfully submitted,

                                   By:    /s/ *Irwin B. Levin*
                                          Irwin B. Levin
                                          Richard E. Shevitz
                                          Eric S. Pavlack
                                          Vess A. Miller
                                          Gabriel A. Hawkins
                                          COHEN AND MALAD, LLP
                                          One Indiana Square, Suite 1400
                                          Indianapolis, IN  46204
                                          Telephone: (317) 636-6481
                                          Facsimile: (317) 636-2593
                                          ilevin@cohenandmalad.com
                                          rshevitz@cohenandmalad.com
                                          epavlack@cohenandmalad.com
                                          vmiller@cohenandmalad.com
                                          ghawkins@cohenandmalad.com


                                          Clifford T. Rubenstein
                                          MAURER RIFKIN & HILL, P.C.
                                          11550 North Meridian Street, Suite 115
                                          Carmel, IN 46032
                                          Telephone: (317) 844-8372
                                          Facsimile: (317) 573-5564

                                          ***Counsel for the Plaintiffs and Proposed Class***

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Irwin B. Levin*
Irwin B. Levin

COHEN & MALAD, LLP
One Indiana Square
Suite 1400
Indianapolis, IN 46204
Telephone (317) 636-6481
Fax (317) 636-2593