**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

DWAYNE RANSOM DAVIS and MELISA
DAVIS, on behalf of themselves and all others
similarly-situated,

                Plaintiffs,

  vs.

                                      Case No: 1:10-cv-01303-JMS-DML

COUNTRYWIDE HOME LOANS, INC.;
BANK OF AMERICA, N.A.; BAC GP, LLC;
and BAC HOME LOANS SERVICING, LP,

                Defendants.

## **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Countrywide Home Loans, Inc. ("Countrywide"), Bank of America, N.A., BAC GP, LLC, and BAC Home Loans Servicing, LP (collectively, "Defendants"), by counsel, submit this Reply in support of their motion to dismiss Plaintiffs' Complaint and state as follows:

## **INTRODUCTION**

Plaintiffs spend a significant portion of their response to Defendants' motion to dismiss arguing that they are not attempting to overturn the state court foreclosure judgment and, rather, they accept the terms of that judgment. Despite these disclaimers, however, Plaintiffs clearly challenge the validity of the underlying state court judgment. For example, on page 2 of their Response, Plaintiffs state, "After Plaintiffs allegedly defaulted on their monthly mortgage payments, [Defendants] . . . employed illegal means to prematurely gain title to and possession of the Davis' property." (Pls.' Resp. to Mot. to Dismiss 2.) Additionally, Plaintiffs assert that had it not been for the alleged fraudulent activity of Defendants, "Plaintiffs would have retained

ownership and remained in possession of their property and not been prematurely evicted from their home." (Pls.' Resp. 8.)  In other words, Plaintiffs make it clear that they do not accept the validity of the state foreclosure proceedings and had it not been for the judgment, they would have been able to retain possession of their home.  Because these claims are a direct attempt to upset the state court judgment, Plaintiffs' Complaint is barred by the *Rooker-Feldman* doctrine.

Plaintiffs also assert that their claims are not precluded by the doctrines of *res judicata* or collateral estoppel because there was alleged fraud on the state court.  However, Plaintiffs had ample opportunity to challenge the alleged fraud in the underlying proceeding.  Indeed, Plaintiffs, through one of the same counsel who entered an appearance and filed this Complaint, attempted to set aside the state court judgment and vacate the sheriff's sale on the very grounds of fraud Plaintiffs now assert they had no knowledge of or ability to ascertain.  The state court heard Plaintiffs' evidence and arguments and ordered the property to be sold pursuant to the final foreclosure judgment.  This is fatal to their claims in this Court.

Finally, Plaintiffs have failed to plead sufficient facts to state plausible RICO and FDCPA claims.  The RICO claim fails because Plaintiffs have not pled facts that plausibly link the alleged predicate acts to any injury.  The FDCPA claim fails because Defendants were the owners of the security interest.

## ARGUMENT

**A.   PLAINTIFFS ARE IMPROPERLY SEEKING TO CHALLENGE THE UNDERLYING STATE COURT JUDGMENT.**

### 1.   *Rooker-Feldman* bars Plaintiffs' RICO claims.

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and *inviting district court review and rejection of those judgments*." *Exxon Mobil*

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (emphasis added). The plain language of Plaintiffs' Complaint demonstrates that they seek relief in this Court as a result of the judgment entered against them in the state court. Plaintiffs repeatedly state that they are not seeking to overturn the state court judgment. At the same time, however, Plaintiffs assert that they lost their home in "disregard . . . of the law," that Defendants' actions caused them to lose their homes, and that they would have maintained possession of their homes had Defendants not engaged in the challenged activity. By claiming that the state court judgment was entered improperly and prematurely, Plaintiffs are necessarily attacking the validity of the state court foreclosure judgment.

Plaintiffs cite *Loubser v. Thacker*, *Davit v. Davit*, and *Verdone v. Taylor County Co-Op Credit Union* to support their argument that their Complaint is not barred by *Rooker-Feldman*. These cases are distinguishable because those plaintiffs alleged large, overarching conspiracies in the underlying state court proceeding aimed at some ulterior motive or purpose to injure the plaintiff. Thus, plaintiffs sought relief in the federal cases separate from the damages caused by the alleged fraudulent underlying proceeding. For example, in *Loubser*, the plaintiff brought a § 1983 claim against state court judges, court reporters, friends, relatives, her lawyers and ex-husband, and several others, claiming that each of them in an underlying divorce proceeding "conspired to defraud her by corrupting her court proceedings," which ended by "depriv[ing] her of property to which she was entitled." 440 F.3d 439, 440-41 (7th Cir. 2006). The Seventh Circuit held that a claim "that a defendant in a civil rights suit 'so far succeeding in corrupting the state judicial process as to obtain a favorable judgment' is not barred by the *Rooker-Feldman* doctrine." *Id.* at 441 (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). Because the plaintiff alleged that the entire judicial process had been tainted by conspiracy, and because

3

she sought damages for harassment and injury to her business, the court found that "merely modifying the divorce decree would not give [the plaintiff] all of the relief she seeks." *Id*. at 442.  Therefore, the *Rooker-Feldman* doctrine did not bar her claims.  *Id.*

Similarly, in *Davit v. Davit*, another divorce case, the plaintiff filed a federal lawsuit claiming that his ex-wife made financial misrepresentations during the underlying divorce proceedings and that the judges, lawyers, and the entire town had overlooked evidence of his ex-wife's forgery in their "overall extortion and racketeering plan."  173 F. App'x 515, 516 (7th Cir. 2006).  Instead the plaintiff contended that the defendants conspired to deny him an honest tribunal in an effort to extort him.  *Id.* at 517.  The district court dismissed on *Rooker-Feldman* grounds, despite plaintiff's claim that he "was not seeking review or rejection of the state court rulings."  *Id.*  The Seventh Circuit reversed the lower court and held that *Rooker-Feldman* did not apply to claims that a "defendant in a civil rights suit 'so far succeeded in corrupting the state judicial process as to obtain a favorable judgment.'"  *Id.* (citing *Loubser*, 440 F.3d at 441). While plaintiff did not seek relief under § 1983, the court noted that "he raised similar claims of judicial corruption that went to the heart of the administration and resolution of his divorce proceedings."  *Id.*  Because the plaintiff was alleging that the entire judicial process had been corrupted in an attempt to injure him through the divorce proceedings, his claims were not barred by *Rooker-Feldman*.

The one foreclosure case cited by Plaintiffs is also distinguishable.  In *Verdone v. Taylor County Co-Op Credit Union*, plaintiff alleged that the presiding judge in the foreclosure proceedings, the credit union who initiated the foreclosure action, the credit union's attorney, the county clerk, the sheriff, and many other individuals conspired to defraud him and deprive him of his lands, obstructed justice, denied him due process of law, and engaged in racketeering and

theft in violation of federal law. 1993 U.S. App. LEXIS 31884, at *3 (7th Cir. Dec. 6, 1993). The Seventh Circuit summarily held that the federal claims were barred by *Rooker-Feldman*, but the conspiracy and racketeering claims were not because those claims were not raised in state court and were not inextricably intertwined with the state court judgment. *Id.* at *7. Again, the plaintiff in *Verdone* was asserting that there was something else going on besides the foreclosure judgment aimed at injuring the plaintiff. Here, Plaintiffs cannot allege that the stated purpose of the underlying state court proceeding was anything other than what occurred—an effort to obtain a foreclosure judgment.

In summary, Plaintiffs allege that they were damaged by losing possession of their home, which directly challenges the state court judgment. Without the state court's foreclosure judgment, Plaintiffs would not have suffered this alleged injury. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999) ("[T]o prevail on her claims, she would inevitably be forced to challenge the validity of [the state court's] order.").

### 2. Plaintiffs' FDCPA claim is barred by *Rooker-Feldman*.

Furthermore, Plaintiffs' reliance on case law from other jurisdictions to argue that the FDCPA claim is not barred by *Rooker-Feldman* is unavailing. In the Seventh Circuit, a plaintiff cannot overcome *Rooker-Feldman* merely by alleging that the FDCPA claim does not attack the validity of the state court judgment. *See Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604-05 (7th Cir. 2008) (dismissing FDCPA claims under *Rooker-Feldman*, despite that "plaintiffs carefully craft[ed] their argument so that their lawsuit s[ought] only to remedy defendants' *representations* and *requests* related to attorney fees, and not the state court judgments granting those requests"); *see also DeBenedictis v. Blitt & Gaines*, 2010 U.S. Dist. LEXIS 72804, at *9-12 (N.D. Ill. July 19, 2010) (dismissing under *Rooker-Feldman* even where plaintiff "insist[ed]

that he d[id] not seek to challenge the state court's judgment").

In *Kelley*, plaintiff-debtors argued that *Rooker-Feldman* did not apply to their FDCPA claims because the claims were independent of the state court judgments and sought "only to remedy defendants' deceptive *representations*." 548 F.3d at 603. There, the Indiana state court had entered judgment against plaintiff-debtors and awarded defendants their fees. *Id.* at 601-02. After the state proceedings ended, the plaintiff-debtors learned from deposition testimony in an unrelated matter that the creditor had agreed to pay defendants' attorney's fees. *Id.* at 602. Plaintiff-debtors then filed the federal FDCPA action alleging that defendants "made false and misleading statements as to their entitlement to recover attorney fees" made during the state proceedings. *Id.* This Court rejected the plaintiff-debtors' argument that, because the claims asserted were independent claims, *Rooker-Feldman* did not apply. *Kelley v. Med-1 Solutions, LLC*, 2008 U.S. Dist. LEXIS 9076, at *9-11 (S.D. Ind. Feb. 6, 2008).

The Seventh Circuit affirmed this decision noting a key distinction between claims asserted independently of state court judgments and claims that attack the validity of the state court judgment. *See Kelley*, 548 F.3d at 605. The court stated that if the defendants "could have succeeded in its fraudulent debt collection attempt without going through the state court and obtaining a court judgment in its favor," then plaintiffs could overcome *Rooker-Feldman* by asserting an independent claim. *Id.* In *Kelley*, however, the court found that "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the FDCPA claims that plaintiffs [brought] ultimately require[d] [the court] to evaluate the state court judgments." *Id.* Indeed, the court "could not determine that defendants' representations . . . violated the law without determining that the state court erred by issuing judgments." *Id.*

6

Here, Plaintiffs also "carefully craft their argument" by insisting that they are not seeking to disturb the state court foreclosure judgments. Nonetheless, Plaintiffs' FDCPA claim "ultimately require[s] [this Court] to evaluate the state court judgments." 548 F.3d at 605. Defendants could not have foreclosed on Plaintiffs' property without going through the state court. Accordingly, absent the state court judgment, Plaintiffs would not have suffered injury due to alleged premature foreclosure and, therefore, the Court should dismiss their FDCPA claims under *Rooker-Feldman*. *See id.*; *see also DeBenedictis*, 2010 U.S. Dist. LEXIS 72804, at *10 ("To evaluate the alleged misrepresentations that led to the state-court judgment against [the plaintiff], the Court would ultimately have to opine on the propriety of the state-court judgment itself. That is exactly what *Rooker-Feldman* forbids.").

### 3.   *Res judicata* bars Plaintiffs' claims.

Plaintiffs' claims are also barred by *res judicata*. Plaintiffs' only challenge against the application of *res judicata* is that it should not be invoked in cases of fraud. While Plaintiffs claim they were unaware of the alleged fraud in the prior proceedings, they plead no facts to establish why they did not have the opportunity to discover the alleged fraud through the exercise of due diligence. Indeed, the contrary is true, and the suggestion in Plaintiffs' pleadings and in their Response that they did not discover the alleged fraud or have an opportunity to do so during the course of the state court proceedings should not be permitted by this Court.

A party will be precluded from disputing *res judicata* based on allegedly unknown facts, if by the exercise of due diligence, those facts could have been discovered in the prior proceeding. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) (citing *Himel v. Continental Ill. Nat. Bank & Trust Co. of Chi.*, 596 F.2d 205, 210 (7th Cir. 1979)). In *Doe*, the court held that the plaintiff could not have discovered the alleged fraud because her employer had repeatedly misled her and the court. *Id.* Therefore, "[n]o amount of diligence could have

7

alerted [the plaintiff] that [the defendant] would turn around and admit that it had blatantly lied about her status over a period of years." *Id.* The court continued by saying that "a critical piece of the puzzle was [the defendant's] change of tactics during the lawsuit." *Id.* Plaintiffs rely on *Doe* to argue that they could not have discovered the racketeering activity because the enterprise "intentionally and fraudulently concealed their misconduct" and "implemented the scheme in a manner that precluded detection." (Pls.' Resp. 19.)

Here, the affidavits in support of summary judgment were presented in open court, and Plaintiffs plead no facts to support any claim that the affidavits were concealed during the course of the litigation. As the foreclosure was a contested matter, Plaintiffs and Plaintiffs' counsel (the same counsel representing Plaintiffs in the state court proceedings) had every right and opportunity to conduct discovery to determine the facts supporting the foreclosure and the affiants' personal knowledge. Because Plaintiffs fail to allege that the exercise of due diligence would not have uncovered the alleged fraud, their claims are barred by *res judicata*.

Moreover, the filings in the state court proceeding, of which this Court can take judicial notice for purposes of ruling on a Rule 12(b)(6) motion to dismiss,[1] belie Plaintiffs' claims of ignorance and, on their face, establish Defendants' *res judicata* defense. On June 3, 2010, Plaintiffs filed an Emergency Motion to Vacate Sheriff's Sale, Motion for Relief from Judgment and Motion to Dismiss ("Motion").[2] This was filed by Plaintiffs' lawyer in the state court proceedings, Clifford T. Rubenstein, the very attorney who has entered an appearance and filed

---

[1] *Kaye v. D'Amato*, 357 App'x 706, 713 (7th Cir. 2009) (citing *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008) ("we may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment"); *Trvebaugh v. City of Indianapolis*, 2010 U.S. Dist. LEXIS 23937, at *3 n.2 (S.D. Ind. Mar. 15, 2010).
[2] A true and correct copy of this Motion filed in *Countrywide Home Loans, Inc. v. Dwayne R. Davis et al.*, Rush County Superior Court, Cause No. 70D01-0802-MF-017, is attached hereto and by reference made a part hereof as <u>Exhibit A</u>.

8

the Complaint in this case. In Plaintiffs' Motion in the underlying foreclosure action, they alleged the following:

> 20. Upon information and belief, Countrywide's Affidavit of Mortgagee and Non-Military Affidavit, dated March 17, 2008 and executed by Keri Selman as Assistant Vice President of "Plaintiff-Mortgagee" and Countrywide's Updated Affidavit of Mortgagee and Non-Military Affidavit, dated July 2, 2009 and executed by Melissa Viveros as Vice President of "Plaintiff-Mortgagee" both contain misrepresentations that warrant relief from judgment.
>
> 21. In the first instance, . . . the Complaint misidentifies the "Plaintiff-Mortgagee" and neither of the Affidavits identifies the employer of either Selman or Viveros. Are they offices of Countrywide? MERS? BAC Servicing? Or BAC? As a result the Affidavits are subject to scrutiny and dismissal as there is no proof the Affidavits are admissible evidence and therefore not the proper basis for the award of summary judgment.

(Exhibit A, 4-5). Plaintiffs went on to allege in their Motion that both Selman and Viveros "are employees of BAC Servicing and as such are not proper officers of Countrywide[.]" (Exhibit A, 5). The state court heard evidence and argument at a hearing on July 2, 2010, and denied Plaintiffs' Motion pursuant to its Order of July 2, 2010.[3]

In short, not only do Plaintiffs plead no facts in their Complaint to establish why they did not have the opportunity to discover the alleged fraud through the exercise of due diligence, but their own filings in the state court proceeding demonstrate that Plaintiffs *did* raise the same so-

---

[3] A true and correct copy of the state court's order filed in *Countrywide Home Loans, Inc. v. Dwayne R. Davis et al.*, Rush County Superior Court, Cause No. 70D01-0802-MF-017, is attached hereto and by reference made a part hereof as Exhibit B.

called "misrepresentations" in the foreclosure affidavits that they now use to support their claims in this case. In either scenario, dismissal on the basis of *res judicata* is appropriate and warranted.

### 4. Collateral estoppel bars Plaintiffs' claims.

Plaintiffs also claim that because there was alleged fraud on the underlying court proceeding, collateral estoppel should not apply. But, like *res judicata,* collateral estoppel bars Plaintiffs' claims because they are challenging information that was available to them in the underlying proceeding. They have also failed to plead how the ultimate outcome of the state court proceeding would have differed had the alleged fraudulent information not been presented. Indeed, despite questions raised by Plaintiffs about the purported "misrepresentations" in the foreclosure affidavits, the state court ordered the Sheriff's Sale to proceed pursuant to its final foreclosure judgment.

Plaintiffs cite *Brokaw v. Weaver* to support their argument. 305 F.3d 660 (7th Cir. 2002). In *Brokaw*, the plaintiff alleged that the state court judgment was a direct result of the fraudulent information presented to remove her from her home. *Id.* at 669-71. Thus, the plaintiff was challenging the entire body of evidence presented to the court. This is significantly different from what Plaintiffs are claiming here. Nowhere in their Complaint do Plaintiffs allege that the facts and figures presented in the affidavits were incorrect. Their only point of contention is that the facts presented in the affidavits were allegedly not properly verified, but they fail to adequately plead facts to show how the result of the state court judgment would have been different had this not been the case. While Plaintiffs claim they were "prematurely evicted," this is a mere legal conclusion which is not supported by any facts in the Complaint. Because Plaintiffs can provide no substantive facts rising to the level of fraud articulated in *Brokaw*,

10

Plaintiffs' claims also should be barred by collateral estoppel.

**B.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED.**

    **1.    Plaintiffs have failed to plead injury "by reason of" the alleged wrongful acts.**

In response to Defendants' RICO arguments, Plaintiffs assert that Defendants "ignore" that their claim is really that Defendants obtained the foreclosure judgments prematurely, not that the foreclosure would have "ultimately been decided differently." (Pls.' Resp. 23.) To establish standing to bring a RICO claim, a plaintiff must allege a "'direct relation between the injury asserted and the injurious conduct alleged.'" *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)); *Kaye v. D'Amato*, 357 F. App'x 706, 716 (7th Cir. 2009) (finding no proximate cause between the alleged RICO activity and the claimed injury because the plaintiff could not demonstrate that he would have benefited had it not been for the alleged pattern of fraud).

Here, Plaintiffs' bare allegation that they prematurely lost possession of their homes is insufficient to make a plausible claim that they suffered injury caused by Defendants' alleged bad acts. Essentially, Plaintiffs are asking this Court to assume, without any factual support, that had it not been for the allegedly fraudulent affidavits, they would not have been evicted from their homes when they were. However, Plaintiffs do not allege that the underlying figures contained in the affidavits were wrong, e.g., that they defaulted on their mortgage, that they did not owe the amount claimed to be owed and, more fundamentally, that Defendants were not entitled to foreclose. Simply making conclusory allegations that they were prematurely evicted, with no factual allegations to explain how this was so or to show how they were damaged, cannot support a federal RICO claim. Because Plaintiffs have failed to plead how they were injured as a direct result of the allegedly fraudulent affidavits, Plaintiffs have failed to plead

injury "by reason of" Defendants' actions, thereby depriving them of standing to assert their RICO claim.

> **2.  Plaintiffs' attempt to amend their Complaint in their Response by specifically pleading the RICO sections under which they bring their claim is insufficient.**

In their Response, Plaintiffs attempt to "clean up" their deficient RICO claim by specifically alleging violations of subsections (c) and (d) of 18 U.S.C. § 1962, which they claim is obvious from the face of the Complaint. However, this argument merely amplifies the insufficiency of Plaintiffs' RICO allegations. For example, Plaintiffs claim that they "have clearly alleged that Defendants conspired to conduct and participate in a pattern of racketeering activity, and thus are invoking 18 U.S.C. § 1962(d)." (Pls.' Resp. 24.) In support of this claim, Plaintiffs cite paragraphs 4, 56, and 70 of the Complaint, which merely use the word "conspiracy," and in no way indicate each of the parties involved in the conspiracy or the alleged overt acts taken to further the conspiracy. Lastly, in an effort to claim that they are not required to specifically plead under which RICO section they bring their claim, Plaintiffs cite to cases where the courts held that the pleadings were sufficiently pled to give notice to the defendants of the RICO claims against them. In those cases, however, the RICO allegations did not need clarification, as they were adequately pled. Here, that is not the case due to Plaintiffs' vague, conclusory allegations. Therefore, Plaintiffs' RICO claim should be dismissed.

**C.   PLAINTIFFS HAVE FAILED TO STATE AN FDCPA CLAIM.**

> **1.  Plaintiffs' conclusory statements as to whether Defendants are "debt collectors" are insufficient even under liberal pleading standards.**

Plaintiffs concede that Countrywide, as the original creditor, is not governed by the FDCPA (Pls.' Resp. 26), so it should be dismissed from the FDCPA claim. As to "the remaining Bank of America Defendants," Plaintiffs merely assert in their Response that the statutory

12

exceptions for the definition of "debt collectors" do not apply. *Id.* Nonetheless, Plaintiffs have yet to allege any factual basis for which to conclude that Defendants are "debt collectors." Plaintiffs have not alleged that the principal purpose of Defendants' businesses is debt collection or that Defendants regularly collect or attempt to collect debts owed or due another. Even more, Plaintiffs have failed to distinguish which entities were involved in any alleged debt collection, and have instead lumped together all Defendants in their Complaint. This failure to plead any distinction between entities and failure to allege facts supporting the legal contention that Defendants are "debt collectors" are grounds to dismiss the FDCPA count for failure to state a claim. *Taylor v. Rollins, Inc.*, 1998 U.S. Dist. LEXIS 4905, at *5-6, 18-20 (N.D. Ill. Mar. 30, 1998) (finding that despite the complaint's allegations that the defendants used a false name in their business of collecting debt, because the complaint failed to allege any specifics of the defendants' relationship, the court dismissed the claims without prejudice, permitting the plaintiff to amend her complaint consistent with Rule 11 obligations).

### 2.     Defendants did not obtain Plaintiffs' loan while it was in default.

"The remaining Bank of America Defendants" also fall squarely outside the definition of a debt collector under 15 U.S.C. § 1692a(6)(F)(iii) because they did not "obtain" Plaintiffs' mortgage while it was in default. Section 1692a(6)(F)(iii) states in relevant part:

> (6) The term "debt collector" . . . does not include--
>     . . . .
>     (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was ***obtained*** by such person . . . .

(emphasis added). The only Circuit Court of Appeals that has addressed the term "obtained" in the context of a merger has held that the term "obtained" is synonymous with "assigned." *Brown v. Morris*, 243 F. App'x 31, 34 (5th Cir. 2007). Because the mortgage company in *Brown*

acquired the mortgage through a merger and not for debt-collection purposes, the court held that the mortgage company was not a "debt collector."  *Id.* at 34-35.

Here, Plaintiffs have not alleged that any of the "remaining Bank of America Defendants" acquired an interest in the Plaintiffs' mortgage by assignment.  Indeed, Plaintiffs readily acknowledge that the "remaining Bank of America Defendants . . . became involved with the [Plaintiffs'] loan after" the merger with Countrywide.  (Pls.' Resp. 26.)  Because Countrywide did not specifically assign Plaintiffs' mortgage to "the remaining Bank of America Defendants" for debt collection purposes, they also do not fall under the FDCPA's definition of "debt collector."

### 3. Defendants' foreclosure action was not debt collection activity governed by the FDCPA.

Finally, Plaintiffs argue that Defendants ignore the "majority view" by asserting that enforcement of security interests fall outside the scope of the FDCPA.  Plaintiffs, however, ignore that federal courts in Indiana, including this Court, take a different view and hold that *in rem* foreclosure actions are not governed by the FDCPA.  *See Overton v. Foutty & Foutty, LLP*, 2007 U.S. Dist. LEXIS 61705, at *17 (S.D. Ind. Aug. 21, 2007) ("If a person invokes judicial remedies *only* to enforce the security the security interest in property, then the effort is not subject to the FDCPA."); *see also Crawford v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS 84995, at *22 (N.D. Ind. Aug. 16, 2010) (noting that "a foreclosure lawsuit undertaken only in an effort to enforce a security interest, and not to obtain a deficiency judgment against the borrowers, does not constitute debt collection within the meaning of the Act"); *Fausset v. Mortg. First, LLC*, 2010 U.S. Dist. LEXIS 24315, at *14, n.3 (N.D. Ind. Mar. 12, 2010) (noting that "if Defendant sought to merely enforce a security interest," then the actions "would not be covered by the FDCPA"); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 925 (N.D. Ind. 2004) (noting that "the

foreclosure . . . as the enforcement of a security interest, is, by itself, untouched by the FDCPA"). The Seventh Circuit has also noted in the context of personal property that the definition of "debt collectors" under the FDCPA excludes "enforcers of security interests." *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999).

Plaintiffs also rely on *Wilson v. Draper & Goldberg, P.L.L.C*, 443 F.3d 373 (4th Cir. 2006), a Fourth Circuit decision, in an attempt to persuade the Court to allow their FDCPA claim to go forward. In *Overton*, this Court rejected the Fourth Circuit's reasoning behind *Wilson*, finding that "*Wilson* d[id] not address sufficiently the specific treatment given in the [FDCPA] statute to limit its application in cases seeking to enforce *only* security interests." *Overton*, 2007 U.S. Dist. LEXIS 61705, at *18. Despite Plaintiffs' assertion to the contrary, this Court's holding in *Overton* "avoids creating 'an enormous loophole' in mortgage foreclosure cases." *Id*. Accordingly, Plaintiffs' reliance on the Fourth Circuit's decision in *Wilson* is misplaced.[4]

Here, Defendants initiated a foreclosure proceeding against Plaintiffs for the sole purpose of enforcing their security interest. In the foreclosure action, Defendants never sought a deficiency judgment against Plaintiffs. Indeed, the foreclosure complaint sought an *in rem* judgment. Under this Court's precedent and that of its sister courts, Defendants' security enforcement activities were not governed by the FDCPA. Accordingly, this Court should follow

---

[4] Plaintiffs also cite *Kaltenbach v. Richards* for support, but that court narrowly held that security enforcement activities can be subject to the FDCPA if the defendant otherwise fits within the general definition of "debt collector." 464 F.3d 524, 528-29 (5th Cir. 2006); *see also Brown*, 243 F. App'x at 35 (discussing *Kaltenbach*, the court noted that the Fifth Circuit "has at least implicitly recognized that a foreclosure is not *per se* FDCPA debt collection"). Because Plaintiffs' conclusory statements that "Defendants are 'debt collectors' as defined by 15 U.S.C. § 1692a(6)" fail to allege any factual basis from which to conclude that Defendants fit within that definition, the Court should, even assuming *Kaltenbach* was controlling, dismiss Plaintiffs' claim for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).

its own precedent and precedent from other federal courts in Indiana by holding that Defendants' foreclosure actions were not "debt collection" activities. *See TMF Tool Co. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990) ("For a variety of quite valid reasons, including consistency of result, it is an entirely proper practice for district judges to give deference to persuasive opinions by their colleagues on the same court.").

## **CONCLUSION**

For the foregoing reasons, Defendants Countrywide Home Loans, Inc., Bank of America, N.A., BAC GP, LLC, and BAC Home Loans Servicing, LP, request that this Court dismiss Plaintiffs' Complaint with prejudice and enter such other relief as this Court deems necessary and appropriate.

Respectfully submitted,

/s/ Matthew R. Strzynski
Matthew R. Strzynski, Atty. No. 23765-15
KRIEG DeVAULT LLP
mstrzynski@kdlegal.com
12800 North Meridian Street, Suite 300
Carmel, Indiana  46032-9422
(317) 566-1110
FAX:  (317) 636-1507

Libby Yin Goodknight, Atty. No. 20880-49B
KRIEG DEVAULT LLP
lgoodknight@kdlegal.com
One Indiana Square, Suite 2800
Indianapolis, Indiana 46204
(317) 636-4341
FAX:  (317) 636-1507

– and –

Richard Cullen, pro hac vice
J. William Boland, pro hac vice
Bryan A. Fratkin, pro hac vice
Brian E. Pumphrey, pro hac vice

        McGUIREWOODS LLP
rcullen@mcguirewoods.com
wboland@mcguirewoods.com
bfratkin@mcguirewoods.com
bpumphrey@mcguirewoods.com
One James Center
901 East Cary Street
Richmond, VA 23219-4030
Phone: (804) 775-1000
Fax: (804) 775-1061

Bradley Kutrow, pro hac vice
McGUIREWOODS LLP
bkutrow@mcguirewoods.com
Bank of America Corporate Center
100 North Tryon Street, Suite 2900
Charlotte, North Carolina 28202-4011
Phone: (704) 343-2049
Fax: (704) 373-8935

Attorneys for Defendants Countrywide Home
Loans, Inc.; Bank of America, N.A.; BAC GP, LLC;
and BAC Home Loans Servicing, LP

**CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  For those parties which are not registered with the Court's electronic filing system, I certify that a copy of this motion has been served by depositing a copy of it in the United States mail, first class postage prepaid on the 6th day of January, 2011.

| | |
|---|---|
| Gabriel Adam Hawkins | ghawkins@cohenandmalad.com |
| Irwin B. Levin | ilevin@cohenandmalad.com |
| Vess Allen Miller | vmiller@cohenandmalad.com |
| Eric S. Pavlack | epavlack@cohenandmalad.com |
| Richard E. Shevitz | rschevitz@cohenandmalad.com |

Clifford T. Rubenstein
MAURER RIFKIN & HILL, P.C.
11550 North Meridian Street, Suite 115
Carmel, IN  46032

            /s/ Matthew R. Strzynski
            Matthew R. Strzynski